# PADDOCK v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

## In Banc, March 27, 1900.

1. **Res Adjudicata: DECISION OF COURT OF APPEALS.** A decision of a court of appeals is binding upon the circuit court in a further trial of the same cause, but is not binding upon this court.

2. **Railroad: REVISION OF STATUTES.** The bill enacted by the thirty-fifth General Assembly revising chapter 42, R. S. 1889, and bringing forward into article 2 of said chapter the acts of March 23rd and March 31st, 1887, as secs. 2593-2597 and 2590-2591, respectively, was merely a continuation of said laws, and not a new enactment of them. Said acts continued to be entirely different laws notwithstanding said revision.

3. ———: ———: **TREBLE DAMAGES.** It follows that in an action by a shipper of live stock founded upon sec. 2590, R. S. 1889, for stock killed by reason of the failure of a railroad company to provide a trap-door in the roof of its car, the plaintiff can not recover treble damages under sec. 2597 of said revision.

3. ———: **CONSTITUTIONAL LAW: ALLOWANCE OF ATTORNEY'S FEE.** The provision of sec. 2590, R. S. 1889, for taxing an attorney's fee in favor of plaintiff is in conflict with article 5 of the Amendments to the Constitution of the United States, and void. (Following *Railroad v. Ellis*, 165 U. S. 150, and overruling *Perkins v. Railroad*, 103 Mo. 52.)

5. ———: **MIXED SHIPMENT OF LIVE STOCK: PRESUMPTION.** Where a shipper mixes two different kinds of live stock in the same car, as authorized by sec. 2594, R. S. 1889, the presumption is that any injury thereto resulted from such mixed shipment; but this presumption may be overcome by proof to the contrary.

6. ———: **TRAP-DOOR IN CAR: STATUTE CONSTRUED: PRESUMPTION.** Under sec. 2590, R. S. 1889, it is the duty of a railroad company to furnish cars having trap-doors in the roof, and for failure so to do it is liable for all damages sustained by the shipper on that account; but the mere fact of injury to stock during shipment does not raise the presumption that such injury was caused by the company's failure to provide a car having a trap-door.

7. ———: ———: ———: ERRONEOUS INSTRUCTION.  It was error to instruct the jury that the failure of defendant company to furnish plaintiff a car having trap-doors, overcame the presumption that the injury complained of was caused by the mixed shipment.

8. ———: CONTRACT OF AFFREIGHTMENT: LIMITING LIABILITY: CONSIDERATION.  By the contract of affreightment in this case it was agreed that any injury occurring to the stock in transit should be presumed to have been caused by over-loading or inattention on the part of the shipper.  Held, first, that this is not a contract exempting the company from the result of its own negligence, but is only an exemption from a statutory obligation, which the shipper may waive; second, that if the rate fixed by the contract of affreightment was less than the legal rate, the difference constituted a sufficient consideration to support said contract; but if the company would not have received said stock for shipment at the legal rate, but would have imposed an additional charge if plaintiff had refused to sign a special contract, then said special contract was not supported by a legal consideration, and was not binding upon the shipper.

9. ———: FAILURE TO POST SCHEDULE OF MAXIMUM RATES: PENALTY.  The statutory penalty imposed for the violation of sec. 2639, R. S. 1889, is exclusive of all others, and the courts have no power to declare void a contract of affreightment because of the failure of a railroad company to comply with the requirements of said section.

10. ———: CONTRACT OF AFFREIGHTMENT: RATES: OPTION.  Where a shipper is given his option between signing a regular contract at the legal rate, or a special contract at a reduced rate, he will be bound by his election to take the special contract.  But if he were given only an option between a regular contract at an illegal rate and a special contract at a reduced rate, his election of the special contract will not bind him, because not founded on a legal consideration.

Appeal from Bates Circuit Court.—*Hon. James H. Lay,*
Judge.

REVERSED AND REMANDED.

*R. T. Railey* for appellant.

(1)  Plaintiff having signed the written contract which declares that a special rate was given in view of the facts in

this case, is concluded thereby. Kellerman v. Railroad, 34 S. W. Rep. 41 (Mo.). (2) We have in this case two presumptions in favor of defendant. First, one of fact that the stock were crowded up in the middle of the car and were injured because of their being overloaded; second, a presumption of law because of their having been shipped in the same car with cattle. There not being a syllable of testimony to overcome either of these presumptions, there was nothing to submit to the jury. Cotton v. Wood, 8 C. B. (N. S.) 571; Railroad v. Schertle, 97 Pa. St. 450; Wintuska's Adm'r v. Railroad, 20 S. W. Rep. 820; O'Malley v. Railroad, 113 Mo. 325; Perkins v. Railroad, 103 Mo. 52; Peck v. Railroad, 31 Mo. App. 125; Glick v. Railroad, 57 Mo. App. 105; Moore v. Railroad, 28 Mo. App. 625; Waddingham v. Waddingham, 21 Mo. App. 628; Bailey v. O'Bannon, 28 Mo. App. 49; Yarnele v. Railroad, 113 Mo. 579; Mathiason v. Mayer, 90 Mo. 586. (3) Section 2590 does not authorize an action for failure to put in trap-doors. It is a highly penal statute and should be strictly construed. 23 Am. & Eng. Ency. of Law, sec. 8, page 374; State v. Bryant, 90 Mo. 537. (4) Sec. 2597, R. S. 1889, can not apply to section 2590 because sections 2590 and 2591 were the only two sections of the act passed by the legislature in 1887. Laws 1887, pp. 107-108. Section 2597 belonged to and applied alone to the act of 1887, pp. 106 and 107, and the latter had no connection whatever with section 2590. (5) (a) Plaintiff's instruction numbered 1 is erroneous in this, that it authorized a recovery although defendant had not furnished the car in compliance with the statute, and although plaintiff used the same without protest, and with full knowledge of its condition. Having accepted the car with knowledge of its condition, he assumed the risk in transporting his cattle and hogs together in said car. R. S. 1889, sec. 2594; Spiva v. Coal Co., 88 Mo. 68; Prewitt v. Eddy, 115 Mo. 304; Weller v. Railroad, 120 Mo. 653; Culbertson v. Railroad, 36 S. W. Rep. 841; Reaves v. Railroad,

60 N. W. Rep. 244; Fulger v. Bother, 117 Mo. 493; Roddy
v. Railroad, 104 Mo. 249.    (b)    Plaintiff's instruction num-
bered 2 is erroneous because there is no evidence in the
record upon which to base it, and because it authorizes a re-
covery without any evidence to support it, and purely upon
matters of conjecture.    Mego v. Railroad, 56 N. W. 1099;
Duncan v. Tel. Co., 58 N. W. 75; O'Malley v. Railroad, 113
Mo. 325; Perkins v. Railroad, 103 Mo. 52; Peck v. Railroad,
31 Mo. App. 125; Glick v. Railroad, 57 Mo. App. 105;
Moore v. Railroad, 28 Mo. App. 625; Hays v. Railroad, 97
N. Y. 259; Baulec v. Railroad, 59 N. Y. 366.    (6)    De-
fendant had the right to take the written contract for its own
protection, as plaintiff was shipping mixed stock in the car.
Rice v. Railroad, 63 Mo. 318; Snider v. Express Co., 63 Mo.
383; Dawson v. Railroad, 76 Mo. 516; Oxley v. Railroad,
65 Mo. 632; Railroad v. Lockwood, 17 Wall. 357; Goggin
v. Railroad, 12 Kan. 416; Kellerman v. Railroad, 34 S. W.
43.    (7)    As this cause was reversed by the court of appeals
in favor of defendant and as no rights have become vested
under it by virtue of that decision, this court has clearly the
right to review or overrule the opinion of the court of appeals.
Chambers, Adm'r, v. Smith, Adm'r 30 Mo. 156; Grumley v.
Webb, 48 Mo. 602; Boone v. Shackelford, 66 Mo. 497;
Wernse v. McPike, 100 Mo. 487; Gwin v. Waggoner, 116
Mo. 143; Bird v. Sellers, 122 Mo. 32; Rutledge v. Railroad,
123 Mo. 131.    (8)    The provisions of the Revised Statutes, so
far as they are the same as those of prior laws, shall be con-
strued as a continuation of such laws and not as new enact-
ments.    R. S. 1889, sec. 6606; St. Louis v. Alexander, 23
Mo. 483; Cape Girardeau v. Riley, 52 Mo. 428; State ex rel.
v. Heidorn, 74 Mo. 410.    (9)    R. S. 1889, sec. 2590, in
respect to attorney fees, is clearly unconstitutional and void.
Railroad v. Ellis, 165 U. S. 150; Railroad v. Morris, 65 Ala.
193; Wilder v. Railroad, 70 Mich. 382; Lafferty v. Railroad,
71 Mich. 35; Railroad v. Williams, 49 Ark. 492; Millett v.

People, 117 Ill. 294; Frover v. People, 141 Ill. 171; Eden v. People, 161 Ill. 296; Durkee v. Janesville, 28 Wis. 464; State v. Loomis, 115 Mo. 307; Briggs v. Railroad, 111 Mo. 174; Barnett v. Railroad, 68 Mo. 56; Perkins v. Railroad, 103 Mo. 52; People v. Gillson, 109 N. Y. 389.   (10)   The action of the trial court in allowing treble damages is in conflict with article 5 of the Amendments to the Constitution of the United States, in this, that it deprives said defendant of his property without due process of law.   Art 8, Amd. Cons. U. S.; Frover v. People, 141 Ill. 172; Millet v. People, 117 Ill. 301; Jones v. Reynolds, 2 Tex. 251; Vansandt v. Waddell, 2 Yerger, 269; Coal Co. v. People, 147 Ill. 66; Wynehamer v. People, 13 N. Y. 432.

*Graves & Clark* for respondent.

(1)   (a)   The defendant had no rate or rates posted as required by law.   R. S. 1889, sec. 2639; Paddock v. Railroad, 60 Mo. App. 335; R. S. 1889, sec. 2601.   (b)   The evidence shows there were but two schedules in the possession of the agent at the time of the contract.   An examination of these schedules, copies of which should be filed with the printed abstracts, show, that for a distance of 70 to 75 miles, the tariff rate for cattle and hogs are the same, to-wit: $18 per standard car.   Under the same schedules the rate for 34 foot car, which is 4 feet longer than a standard car, is $19.80 in each of the schedules, so there could be no special rate so far as these schedules are concerned.   An examination of the evidence of W. C. Burrus, and the schedules filed, and the rules of the company requiring a rate of 150 per cent of schedule rate, if party refused to sign release contract, shows there was but one published rate within the maximum fixed by statutes.   Paddock v. Railroad, *supra*.   (c)   Under the evidence the contract is so thoroughly demonstrated to be without consideration, that it is hardly worth while to discuss the clause

of the contract, "If any of said stock shall sustain injury . . . . . . . the presumption is that the same resulted from overloading." But the evidence shows that the whole load of stock only weighed 20,060 lbs, whereas the minimum weight for a car load of mixed stock, 34 foot car, would be 27,360 lbs, so there was no overloading, under the law or evidence. R. S. 1889, sec. 2505. (d) The contract is void upon its face. It expressly announces, in the first clause, that the shipper will have to sign a release contract or not ship. Railroad v. Craven, 20 S. W. Rep. 803. (e) The contract says upon its face that the agent is unauthorized to enter into any kind of contract for the shipping of stock, except the contract pleaded. Plaintiff was forced to sign a release contract or not ship. This defendant can not do, and contracts so procured are void as against public policy, as expressed by the law. (2) Sec. 2594, R. S. 1889, creates no presumption of law, that the injury to the stock was the result of the mixed shipment. It provides that such shipment shall be at shippers' risks if injury occur to the stock by reason of the mixing, otherwise at risk of carrier. (3) Appellant's contention as to the construction of the meaning of section 2590, is entirely too differentiated for ordinary purposes. Distinctions are drawn where differences do not exist. The section requires two things of a railroad company, i. e. first, to furnish cars with trap-doors in the roof, and secondly, to receive and transport stock to the consignee. One requirement is as much a part of the section as is the other. For a violation of either requirement, damages and an attorney's fee, taxable as costs, are recoverable. (a) The whole contention under this subdivision of appellant's brief is one easily determined. The two sections under which damages were adjudged, and trebled, are sections 2590 and 2597, R. S. 1889. They are both sections of the same act, as they now stand. It matters not what position they formerly occupied. All of chap. 42, was passed

as a revised bill by the thirty-fifth General Assembly, and as such became a new act, a new law, complete within itself and to be construed, if possible, within itself. If one section of the act had been borrowed from Kansas and the other from some other State, yet when passed by the legislature, they would have to be construed together, as sections of one act. So in a revised bill. These sections are both in a revised bill. Summary of Revised Bills and Unrevised Bills, pages 2229 to 2232, vol. 2, R. S.; Sutherland on Stat. Con., secs. 154 et seq. (b) This revised bill repealed all previous statutes. Sutherland on Stat. Con., *supra*. (4) The contract is void for want of consideration, and the instruction properly ignores the terms of such a contract. Paddock v. Railroad, 60 Mo. App. 328. (c) But it is further contended that, because the plaintiff accepted the car, with knowledge of its condition, he assumed the risk. This point is so thoroughly answered by the opinion of the court of appeals, that further authority is unnecessary. The Spiva, and other cases cited by appellant, are not in point. The common carrier owes a duty to the public. Welsh v. Railroad, 10 Ohio St. 65; Railroad v. Pratt, 22 Wall. 123; Moulton v. Railroad, 31 Minn. 85; Railroad v. Lockwood, 17 Wall. 337. (5) If the contract is void it affords no protection, whether the plaintiff mixed his stock or not. That it is void both under the evidence and upon its face, there can be no question. (6) If contract is void, the presumptions created by it are likewise void. And, by the way, it is from this void contract that defendant gets the presumption of the damage being occasioned by overloading. If there was no consideration for the contract, the whole written document falls, whether it be the parts relating to defendant's negligence or parts relating to the plaintiff's negligence. (7) Every question of law in this case except the constitutional question had been passed upon in this case by the court of appeals, and the construction of the law there stated is conclusive. The case was retried according to the law of the case as by that court

announced, and such became and is the law of this case.
Dowling v. Allen, 102 Mo. 221; Hickman v. Link, 116 Mo.
123; Gwin v. Waggoner, 116 Mo. 143; Wilson v. Beckwith,
117 Mo. 61; Fluert v. Ambrose, 34 Mo. App. 360; Lancaster
v. Elliott, 42 Mo. App. 305; Mack v. Schneider, 57 Mo. App.
431. (8) A Revised Bill, repeals all of the act or acts of
which it is a revision, and for that reason the several acts
going into and making of chapter 42, the Revised Bill, was
by such measure, repealed. Sutherland on Stat. Con., sec.
154. (9) The taxation of an attorney's fee as costs is not in
violation of the Constitution. It is not purely a compensatory
matter for the plaintiff, but is and was intended as a punish-
ment to defendant for its failure to comply with a statutory
duty. The legislature has power to inflict penalties sufficient
to compel railway corporations to respect the law and comply
therewith. The enforcement of the law is a protection to the
public, and upon this theory, our courts have universally
upheld the penalties inflicted by the law. Barnett v. Rail-
road, 68 Mo. 56; Perkins v. Railroad, 103 Mo. 57; Briggs v.
Railroad, 111 Mo. 172; Dilley v. Railroad, 55 Mo. App. 123.


MARSHALL, J.—This is an action, based upon section
2590, Revised Statutes 1889, to recover the value of five hogs,
alleged to be worth seventy-eight dollars. The petition charges
that the defendant failed to furnish to the plaintiff a car with
trap-doors in the roof thereof, one near each end and upon
opposite sides of the car, large enough to conveniently admit
a man's body, as the section quoted requires, and that in con-
sequence thereof the hogs piled up in the center of the car, the
plaintiff's agent, who was accompanying them, was unable to
get to them for the purpose of separating them, and five,
of the sixty-four hogs that were in the car with five head of
cattle, were overlaid and killed. The prayer of the petition
was for seventy-eight dollars, to be trebled by the court.

The case was tried in the Bates Circuit Court, the plaintiff recovered judgment and the defendant appealed to the Kansas City Court of Appeals, where the judgment was reversed because of error in giving the second instruction for the plaintiff, in that it predicated a right of recovery in the plaintiff solely upon the ground that the defendant had failed to furnish the plaintiff a car with such a trap-door in the roof thereof and the hogs were shown to be dead when the car reached its destination, when there was no evidence in the case that if there had been such a trap-door in the roof of the car, the plaintiff's agent could by getting into the car have separated the hogs and prevented their being smothered. [Paddock v. Mo. Pac. Ry. Co., 60 Mo. App. loc. cit. 340.]

Afterwards in the circuit court the defendant filed an amended answer setting up the contract of affreightment and claiming that the plaintiff had assumed all risks by virtue of the specific agreement entered into by him, and further claiming that sections 2590 and 2597, Revised Statutes 1889, are unconstitutional, in that they violate section 10 of article 2, section 20 of article 2 and section 21 of article 2, of the Constitution of Missouri, and articles 5 and 8 of the Amendments to the Constitution of the United States, and also that they are class legislation. The reply is a general denial, with a special plea that the contract relied on by the defendant was without consideration and therefore void, and that the rate charged the plaintiff was not a special rate given in consideration of the assumption of all risks by the plaintiff.

The case was submitted to the trial court upon the same evidence as upon the first trial, and which was before the Kansas City Court of Appeals. The report of the case in that court does not set out the instructions in full, but it does show that only two were given for the plaintiff, and from what that court says of them we gather that they were substantially the same as those the court gave for the plaintiff as shown by the record now before us, and which are as follows:

"1.   The court declares the law to be, that it was the duty of the defendant to furnish to the plaintiff for the shipment of his stock, a suitable and convenient stock car, with trap-doors in the roof thereof, one near each end and upon opposite sides, large enough to conveniently admit a man's body, and near enough to the sides of the car to enable the person in charge of the car to conveniently descend to the interior of said car by means of a ladder or steps, which should be constructed directly under such doors; and if the court finds and believes from the evidence that the defendant failed to furnish to the plaintiff such car, and that by reason of such failure upon the part of the defendant, the plaintiff suffered the loss of five hogs, then the court should find for the plaintiff in such sum as the court finds and believes from the evidence that such hogs were worth, not exceeding the sum of seventy-eight dollars.

"2.   The court further declares the law to be, that the plaintiff having shipped both cattle and hogs in the same car, the presumption is that the death of the hogs was occasioned by and resulted from such mixed shipment, but such presumption is not conclusive, and if the court finds and believes from the evidence that the death of the hogs was not occasioned by the fact of such mixed shipment, but from the negligence and failure of the defendant in failing to furnish a proper car, as set out in instruction No. 1, then the finding should be for the plaintiff, as in said instruction indicated, if under the evidence and said instruction, No. 1, the court finds that he is entitled to recover in the case."

The trial court found for the plaintiff in the sum of $70.50, and trebled the same, making $211.50, and afterwards on motion allowed the plaintiff an attorney's fee of $40. After proper steps the defendant appealed. The facts will sufficiently appear in the course of this opinion.

## I.

Although the decision of the Kansas City Court of Appeals was the law of the case on the trial anew in the circuit court (May v. Crawford, 150 Mo. loc. cit. 524) it is not binding on this court. (Hennessy v. Brewing Co., 145 Mo. loc. cit. 115.) Notwithstanding that fact, however, we might content ourselves with reversing the judgment for the giving of the second instruction for plaintiff by the trial court, as the Kansas City Court of Appeals did, because the evidence, which is the same here as it was there, does not furnish a basis for such an instruction, but there are questions presented by this record which go deeper than those which were presented to that court, and which, in the interest of a proper administration of the law, call for a square decision. For these reasons we shall treat the case as if it had never been decided by any appellate court.

## II.

This case is bottomed upon a violation of section 2590, Revised Statutes 1889, and the damages assessed were trebled by the trial court under the authority of section 2597, Revised Statutes.

The correctness of this ruling is the first proposition in this case.

Sections 2590 and 2591, Revised Statutes, are the two sections of the Act of March 31, 1887 (Laws 1887, pp. 107, 108). That act was carried, *in ipsissimis verbis,* into the Revision of 1889, and these sections were numbered, by the revisers, 2590 and 2591. Section 2597, Revised Statutes, is section 5 of the Act of March 23, 1887 (Laws 1887, p. 107), carried, *in ipsissimis verbis,* into that Revision. Those acts were independent acts as they appear in the Session Acts. For a violation of the Act of March 31st (now secs. 2590 and 2591) a

defendant was liable only for compensatory damages. For a violation of the Act of March 23d (now secs. 2593 to 2597 inclusive) a defendant was liable not only for compensatory damages but for treble damages.

When these two acts were carried into the Revision of 1889, they were placed by the revisers in article 2 of chapter 42 and the sections were given the numbers indicated. The plaintiff now contends that the summary of Revised Bills (2 R. S. 1889, p. 2229) shows that chapter 42 as it appears in the Revised Statutes, was enacted as a new act by the Thirty-fifth General Assembly, and hence the two acts referred to, though entirely different before, became a complete new act, and all its parts must be construed together, and therefore a violation of section 2590 is now visited with the consequences not only of having to pay compensatory damages, but also, under section 2597, with a penalty of having the actual loss trebled.

On the other hand the defendant claims that the act of March 31st, and March 23d, were totally distinct before the revision, and that when they were carried, bodily and without change into the Revision, they were continuations of the same laws and not new enactments, and hence that the treble damages allowed for a violation of the act of March 23d, can not be applied to a violation of the act of March 31st.

If there had been no revision of the laws, the contention of the defendant would be absolutely unanswerable.

The intention of the legislature when the Revised Statutes were adopted, is clearly expressed in section 6606, Revised Statutes 1889, where it is provided: "All acts of a general nature, revised and amended and re-enacted at the present session of the General Assembly, as soon as such acts take effect, shall be taken and construed as repealing all prior laws relating to the same subject; but the provisions of the Revised Statutes, so far as they are the same as those of prior

laws, shall be construed as a continuation of such laws, and not as new enactments." ·

Sections 2590 and 2591, as also sections 2593 to 2597 inclusive, of the Revised Statutes 1889, as above shown, are exactly the same as the laws of March 31st and March 23d, respectively, and therefore those sections must be treated, under this legislative direction, as mere continuations of those laws and not as new enactments. They were entirely different laws before and they continued to be different notwithstanding they were carried into the Revised Statutes and placed in the same article of the same chapter of the Revised Statutes, and notwithstanding that they may appear in the bill enacted by the Thirty-fifth General Assembly which revised chapter 42. This has been the uniform ruling of this court on this question. [St. Louis v. Alexander, 23 Mo. 483; City of Cape Girardeau v. Riley, 52 Mo. loc. cit. 428; State ex rel. Att'y-Genl. v. Heidorn, 74 Mo. 410; Pool v. Brown, 98 Mo. loc. cit. 680.]

A reference to a few of the incongruities that would result from any other construction will be sufficient to show that the Legislature did not intend to apply the treble damages allowed by section 2597 to the failure to obey sections 2590 and 2591. Thus: section 2610 of this same article 2 of chapter 42, provides a penalty for damages to railroad property and allows the actual damage to be trebled. If section 2597 applies to the whole of article 2, the result would be the railroad company would recover nine times the actual value of the property injured. So section 2611 provides a penalty for failure on the part of a railroad to fence its track, and in case stock is injured the owner is allowed double the actual value, and also attorney's fees. If section 2597 applies the owner would recover six times the value of the stock. Section 2643 provides that if any common carrier shall do any of the things "in this act prohibited" (this was also an act passed in 1887, and carried into the Revision of 1889) the person injured should recover three times the amount of

damages sustained.    If section 2597 applies the injured party
would recover nine times the damages sustained.

In short, article 2 of chapter 42, is largely made up of
several distinct acts relating to different matters pertaining to
railroad corporations, which have been put together in one
article by the revisers, but which have never been moulded
into a single enactment by the General Assembly. Each of such
acts carried with it a penalty for its violation, and when those
acts were collated under the title of article 2 of chapter 42,
the effect was no different from what it would have been if no
such collation or revision had ever been made.    The penalty
originally provided for a violation of each act remains the
same.

It follows that the circuit court erred in trebling the
damages allowed for a violation of section 2590, Revised
Statutes 1889.

### III.

The allowance of an attorney's fee of forty dollars
is challenged, on the ground that in this regard section 2590
violates article 5 of the Amendments to the Constitution of the
United States.

Section 2612, Revised Statutes 1889, allows an attorney's
fee to be taxed in favor of a plaintiff in cases where stock has
been injured in consequence of a failure of the railroad com-
pany to fence its track.    The constitutionality of the statute
was drawn in question in the case of Perkins v. Railroad, 103
Mo. 52, and it was there pointed out that while such a statute
had been held unconstitutional in Michigan, it had been held
valid in Illinois, and the Illinois rule was followed in that case.
The ruling was based upon the theory that the attorney's fee
might be lawfully imposed as a penalty for the violation of
the law.    This decision was rendered in 1890.    Since then
the constitutionality of such a statute has undergone examina-
tion by the Supreme Court of the United States, in the case
of G. C. & S. E. Railroad v. Ellis, 165 U. S. 150, and the
statute was held to be in conflict with the fifth Amendment to

the Constitution of the United States, and therefore void. That court in a most exhaustive and unanswerable opinion by Mr. Justice BREWER said: "It is simply a statute imposing a penalty upon railroad corporations for a failure to pay certain debts. No individuals are thus punished, and no other corporations. The act singles out a certain class of debtors and punishes them when for like delinquencies it punishes no others. They are not treated as other debtors, or equally with other debtors. They can not appeal to the courts as other litigants under like conditions and with like protection. If litigation terminates adversely to them, they are mulcted in the attorney's fees of the successful plaintiff; if it terminates in their favor, they recover no attorney's fees. It is no sufficient answer to say that they are punished only when adjudged to be in the wrong. They do not enter the courts upon equal terms. They must pay attorney's fees if wrong; they do not recover any if right; while their adversaries recover if right and pay nothing if wrong. In the suits, therefore, to which they are parties they are discriminated against, and are not treated as others. They do not stand equal before the law. They do not receive its equal protection."

This closes the discussion. For whatever this court thought in the Perkins case as to the validity of the statute under our Constitution, the Supreme Court of the United States says such a statute violates the Federal Constitution and that court's interpretation of that Constitution is binding upon this and all other courts on such questions.

The protection of the Federal Constitution has been invoked by the defendant, in this regard, in this case, and we have no option but to follow that ruling. Accordingly it is adjudged error to have allowed an attorney's fee in this case and Perkins' case, *supra,* must be regarded as no longer the law in this State on that question.

## IV.

This was a mixed car; that is, sixty-four hogs and five head of cattle were shipped in the same car, and the defendant contends that under section 2594, Revised Statutes 1889, and under the terms of the contract of affreightment the plaintiff assumed all the risk of injury to the cattle in consequence of shipping two different kinds of stock in the same car.   On the other hand the plaintiff contends, and his second instruction so told the jury, that while the presumption of law is that the injury resulted from the mixed shipment, this presumption is not conclusive and that it may be rebutted and overcome by the plaintiff, and in this case the jury was instructed that this presumption would be overcome if they found that the negligence and failure of the defendant to furnish a car with trap-doors in the roof so that a person could enter the car from the top and if they further found that the injury was oc-casioned by such failure to so furnish such a car.

In other words while recognizing that there was a presumption flowing from mixed shipments the plaintiff's instructions told the jury that the failure of the defendant to obey section 2590 and to furnish a car with such a trap-door, was of itself sufficient to overcome that presumption.   This was clearly error.   The true meaning of section 2594 is that where an owner mixes two different kinds of stock in the same car and injury results to any of the stock "by reason of such mixed shipment" the railroad company is not responsible.   The presumption is that the injury did result from the mixed shipment, but the shipper can overcome that presumption by showing that the injury did not result from that cause but from a cause which would have produced the injury if there had been no mixing of the stock.   And the meaning of section 2590 is that it is the duty of the railroad company to furnish cars for the shipment of stock with trap-doors in the roof, so that a person may enter the car therefrom, and that if it fails to do so the

company is, "liable to all persons damaged thereby for all damages which they may sustain on that account." There is no presumption however that the failure to furnish such a car was the cause of the damage. In this respect this section differs from section 2594 in reference to mixed shipments, for that section provides that in such cases the owner assumes the risks of mixing the shipment (which however the owner may rebut, as above indicated) whereas section 2590 does not declare that the failure of the railroad to furnish such a car shall be any evidence or presumption that such failure caused the injury, but leaves the plaintiff to connect the failure and the injury by a preponderance of the proof as in any other case of common law or statutory negligence.

In this case the defendant violated its duty under section 2590. The plaintiff knew that fact and made no complaint, but undertook to fix the car as he wanted it, by putting a partitions of poles across the middle of the car to separate the hogs from the stock—the bottom pole was from eighteen inches to three feet above the floor of the car, sufficient in either condition to permit the hogs to pass under it and get in with the stock. The plaintiff intended to cut a trap-door in the roof of the car but forgot to do so.

In this condition he shipped his stock in this car from Butler to Kansas City, a distance of seventy-three miles. He sent his son along with the stock. The son examined the car at Passaic, Adrian and Archie and found the hogs piling up on each other in the middle of the car. He tried from the outside of the car to separate them but could not do so. He testified, over the defendant's objection, that he told some of the train men in the caboose, he did not know whether it was the conductor or not, that the hogs were pulling up on each other and that he wanted an axe or hatchet to cut a hole in the roof of the car so as to get in and separate the hogs, but the man answered him, gruffly, that he had no hatchet. Thereupon he made no further effort to separate them. When the

train reached Kansas City, five of the hogs were lying in the middle of the car dead and plaintiff's son at once sold them. Sometime after the shipment, the plaintiff notified the agent of the defendant at Butler that he had lost five hogs and placed his claim upon the failure of the defendant to furnish a car with a trap-door in the roof. No notice was given the defendant's agent at Kansas City when the car arrived there, nor was there any opportunity afforded it to ascertain in any way what caused the death of the hogs.

The Kansas City Court of Appeals held that upon the evidence the plaintiff had failed to make out a case, for it was not shown that if there had been a trap-door in the roof of the car so that the plaintiff's son could have gotten into the car and if after he had gotten into the car he had tried to separate the hogs there is no evidence that he could have succeeded, and this evidence could have been supplied by expert stock men and shippers who were present at the trial but were not interrogated thereon. On the retrial of the case in the circuit court, the plaintiff stood upon the same evidence and did not take advantage of the suggestion of the court of appeals and supply this testimony. It was a question of fact for the jury whether the failure of the company to furnish a car with trap-doors was the cause of the injury to the hogs, as it was also a question of fact for the jury, whether the presumption that the injury occurred in consequence of the mixed shipment was overcome by the plaintiff's showing that the mixing did not cause the accident.

It was error for the court to instruct the jury that the neglect of the defendant to furnish a car with trap-doors overcame the presumption that the injury was caused by the mixed shipment. For this left no fact to be found by the jury at all. It was conceded that the car furnished had no trap-doors. This testimony is not in itself sufficient to connect the injury with the failure to have trap-doors, nor is it sufficient to show

that the injury was not caused by the mixed shipment, and thereby to relieve the plaintiff of the risk he assumed.

As this case must be retried, these questions of fact can be and should be cleared up.

## V.

The defendant further contends that by the contract of affreightment it was agreed that it should be presumed that an injury that occurred to the stock was caused by overloading or inattention on plaintiff's part. The plaintiff pleads want of consideration to support the contract. The defendant contends that the rate charged was less than the legal rate and that such difference is the consideration for this contract. It is proper to premise the discussion of this branch of the case by saying that such a contract is not a contract exempting defendant from its own negligence. It is only an exemption from a statutory obligation or duty enacted for the benefit of the shipper, and the shipper has just as much right to waive its observance beforehand as he has to give a receipt in full afterwards for its violation, or to compromise a claim based on its violation or to forego suit entirely. The statute imposes an obligation to the shipper and not to the public at large, for they can have no interest in the matter.

The rate charged was $19.80. The legal rate for a standard car (a 30-foot car) allowed by section 2675, Revised Statutes 1889, would be $21 from Butler to Kansas City, or $23.10 for a 34-foot car. The rate charged for this 34-foot car was therefore $1.20 less than the legal rate for a standard car or $3.30 less than the legal rate for a 34-foot car, and defendant claims that this difference is a sufficient consideration to support this special contract. If this was all, it might be an answer to the plaintiff's contention. But it further appears that the company had a rule by which 150 per cent was to be collected if a shipper refused to sign the special contract.

Under this rule the rate from Butler to Kansas City would be $29.70, if the shipper refused to sign a special contract, which would be in excess of the legal rate.   Therefore it is argued that as the shipper was given only the option of signing a special contract for a lesser rate than the legal rate, or a contract for more than the legal rate, the action of the company was contrary to law and therefore the shipper is not bound by the contract he did make.   It is further argued that the company violated section 2639, Revised Statutes 1889, by not posting the schedule of rates as required by that section.   The penalty prescribed for a violation of section 2639 is treble the damage sustained by such violation, that is, in such a case as this treble the rate charged in excess of the legal rate.   The statute limits the punishment to that amount and the courts have no right to enlarge the penalty.   [Peoples Railway v. Grand Ave. Railway Co., 149 Mo. l. c. 253, and cases cited; Utley v. Hill, 155 Mo. 232.]   The statute does not declare a contract of affreightment void if more than the legal rate is charged, and the courts have no power to so declare.

If it be true, as the testimony of the defendant's agent seems to indicate, that where a shipper refused to sign a special contract limiting the common law and statutory liability of the company, the agent was required to charge 150 per cent of the rates specified in the statute tariff rate, and if this plaintiff was given only an option between such conditions, then the acceptance of such a reduced rate would not be a sufficient consideration to support such a special contract.   For the shipper is entitled to know what the legal rate is, and to take his choice between shipping at that price with the responsibility attaching thereto, or to pay the reduced rate and to take the risk specified in such special contract.   As clearly as can be gleaned from the record, no such option was given to this plaintiff.   Of course if the plaintiff knew the difference between the legal rate and the rate here charged, and with such knowledge elected to take the special rate, the contract will be binding on

Paddock v. Mo. Pac. Ry. Co.

him, notwithstanding the failure of the company to post the tariff or to call his attention to such difference when his contract was entered into; for the posting of the tariff is only intended to give shippers an opportunity of knowing, and manifestly would be of no service to this plaintiff if he knew already and without reference to the tariff what the legal rate was.    On the trial anew the testimony should be confined to what was done and said between plaintiff and the agent—or representative of the defendant when this contract was made, and as to plaintiff's knowledge of the legal rate and the difference between that rate and the special rate.    The course of business or custom as to rates charged other persons is inadmissible except as such testimony would tend to show plaintiff's knowledge as to the legal and special rates.    Upon the whole case if it appears that plaintiff was given his option between signing a regular contract at the legal rate or a special contract at a reduced rate and elected to take the special contract, he will be bound thereby.    But on the other hand, if he was given only an option between contract at an illegal rate and a special contract at a reduced rate, and took the special contract, he will not be bound thereby because it is not based on a valuable or legal consideration.

If it should appear when the case is again tried on these principles, that the special contract was entered into with knowledge as herein indicated, then under the second covenant the presumption will attach that the injury to the hogs resulted from overloading or from neglect or inattention on plaintiff's part.    But this is a disputable presumption and may be overcome by competent proof that the car was not overloaded, or that the injury was caused in some other manner than by overloading or from neglect.

There ought to be no difficulty in arriving at the truth with respect to the questions of fact herein referred to, when tested according to the principles of law herein laid down.

St. Louis v. Brown.

But they are not sufficiently shown by this record to justify a judgment here for either party.

For these reasons the judgment of the circuit court is reversed and the cause remanded. *Gantt, C. J.,* and *Burgess, J.,* concur as to paragraphs 1, 2, 3 and 4, except as to overruling the Perkins case, and dissent as to the 5th paragraph; *Brace, J.,* concurs *in toto; Valliant, J.,* concurs as to all except the 5th paragraph and dissents as to that; *Sherwood* and *Robinson, JJ.,* absent.