CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* COTTON.

Opinion delivered September 21, 1908.

1. CONNECTING CARRIERS—LIMITATION OF LIABILITY OF INITIAL CARRIER.—A stipulation in a bill of lading limiting the liability of the initial carrier which signed it to loss or injury on its own line is valid if based upon a valid consideration. (Page 343.)

2. SAME—LIABILITY FOR DAMAGE BEYOND LINE.—In the absence of any contract limitation, a carrier which accepts goods for transportation beyond its line becomes liable for injuries occurring upon the line of a connecting carrier. (Page 343.)

3. SAME—LIMITATION OF LIABILITY—VALIDITY.—Where a shipper demanded an unrestricted contract for the shipment, and the carrier refused to issue to him such a contract, but gave him a bill of lading restricting its liability to loss or injury over its line, such restriction was void. (Page 343.)

Appeal from Yell Circuit Court; *Hugh Basham,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellee, R. S. Cotton, sued appellant, the Chicago, Rock Island & Pacific Railway Company, for the loss of eleven and the injury of twenty-three head of cattle, occurring, as he alleges, in transit from Ola, Arkansas, to National Stock Yards, Illinois, in December, 1906.

Appellant answered, denying all the material allegations of the complaint, and with its answer exhibited a copy of the contract under which it claims said shipment had been made, and averred that, in accordance with the contract of shipment, said cattle had been promptly and safely delivered to a connecting carrier, the St. Louis & San Francisco Railroad Company, at Wister, Indian Territory, in the same condition in which they were received at Ola.

Appellee filed a reply to this answer, alleging that the contract of shipment exhibited with appellant's answer, and which purported to limit appellant's liability to injuries received on its own line, was procured by coercion, and is therefore void.

The facts are undisputed, and are as follows:

R. S. Cotton testified: "I am the R. S. Cotton who shipped the cattle mentioned in the complaint. I shipped thirty-four head from Ola, Arkansas, and they were in good condition when shipped. They would average 725 to 750 pounds. White and Lipsey were with me when the cattle were loaded. I did not accompany the shipment. I obtained a bill of lading from the agent.

"Q. What did you state to the agent?

"A. I went in and said I wanted an unlimited liability bill of lading because I was not going. I did not look at the contract, for I went in in a rush, and the agent said I would have to have some one to sign up with me. The train was ready to pull out, and I called to the man that was with me, and as I signed up the train pulled out. The cattle were consigned to Stewart Sons & McCormick. I do not know what became of the contract. I have tried to get a copy of it, but failed. The cattle were worth $250 or $300 more at Ola when they were shipped than I received for them in St. Louis, and cattle were worth more in St. Louis at that time than in Ola. When the cattle were sold, they weighed 650 pounds; that is, the twenty-three head which got

there.   Eleven of them were lost.   I don't know what became of them.   The cattle we sold in St. Louis brought two and a half cents per pound."

On cross examination he testified as follows:

"Q.   You can read and write?

"A.   Yes, sir.

"Q.   The agent signed for the railroad company and you signed for yourself?

"A.   Yes, sir.

"Q.   Do you state to the jury and to the court that this is not the contract you signed—not the one you got?

"A.   It is not the one I should have got.   I had to ship on this one or not ship them.   He said: 'The train is ready to pull out now; it is moving and you will have to be in a hurry.'

"Q.   Did you sign that after you loaded the cattle?

"A.   Yes, sir."

Other testimony was introduced by appellee in regard to the loss of and injury to the cattle, but as the amount of the verdict is not questioned it is not necessary to abstract it.

The appellant adduced testimony tending to show that the cattle were not lost or injured on its line of railway, and over the objections of appellee read to the jury the contract above referred to, in which it limited its liability to loss or injury on its own line of railway.

The court refused the instructions asked for by appellant, and over its objection instructed the jury as follows:

"Gentlemen of the jury, you are instructed that this is a suit for damage to stock received for shipment at Ola, Arkansas. You are the sole judges of the weight and sufficiency of the evidence.   If you find from the evidence that the plaintiff's stock was lost or damaged by unreasonable delay or by reason of rough handling at any point between Ola and St. Louis, you will assess his damages at such sum as you think the evidence justifies.   The burden of proof is upon the plaintiff to make out his case by a preponderance of the testimony; but a bare preponderance is sufficient, however."

There was a jury trial and a verdict for appellee for $209. The case has been brought here by appeal.

*Buzbee & Hicks* and *Geo. B. Pugh,* for appellant.

The contract limited the liability of appellant to its own line. Such a contract is reasonable, and was within the right of appellant to require. 1 Hutchinson on Carriers, (3 Ed.), § 147; 37 S. W. 37; 54 S. W. 193; 49 L. R. A. 270. And appellee is bound by the contract. 84 Ark. 421; 83 Ark. 502; 82 Ark. 469; *Id.* 353; 50 Ark. 397; 46 Ark. 236.

2. The court ought to have instructed the jury that appellee was bound by the terms of the contract, and could not recover for damages occurring on another line of railway; but, failing in that, the court should have left it. to the jury, in view of the fact that the limitation clause of the contract was not brought into question by appellee's pleadings, and in view of the evidence, to say whether or not the contract was fairly entered into.

*Bullock & Davis,* for appellee.

1. The contract is not sufficient to limit the liability of the appellant to the end of its own line because (1) the cattle were received and loaded for shipment without any such contract, and without information to appellee that he would· be required to make any such contract. It was too late after loading to impose such a stipulation upon him. White, Supplement Law of Negligence, § 6497; 86 S. W. 32; 89 S. W. 968. (2) It is without consideration to support it. 81 Ark. 469. (3) Appellant required appellee to sign the contract, without explanation (in the face of his demand for a contract of shipment at carrier's risk), thereby attempting to limit not only its own common-law liability but also that of its connecting carrier, contrary to his instruction. 13 Atl. 818.

2. Having accepted for shipment goods bound for a point beyond its own line, a carrier is bound to notify the connecting carrier of any facts as to destination of goods, method of transportation, etc., necessary to enable it properly to receive and transport the goods. 6 Cyc. 483; 5 Tex. Civ. App. 213; 8 Wall. 342. See, also, 1 Hutchinson on Carriers, § 140; 118 Cal. 648.

HART, J., (after stating the facts). The sole question to be determined in this case is whether or not the contract signed by the parties to this litigation is void for the reason that it was procured by coercion.

If the contract in question is valid, the appellant has expressly limited its liability to loss or injury occurring on its own line of railway, and is not liable; for under the undisputed facts of this case the loss of and injury to the cattle occurred on the line of the connecting carrier. That a contract between a railway company and a shipper limiting the liability of the carrier to loss or injury on its own line is binding, if based upon a valid consideration, we refer to the following: *Chicago, R. I. & P. Ry. Co.* v. *Slaughter*, 84 Ark. 423, and cases cited.

On the other hand, it is equally well settled in this State that, in the absence of a stipulation restricting the liability, the acceptance of goods by a carrier for transportation implies an untaking on its part to transport them to the place to which they are consigned, wherever that may be, even beyond its own line, and to be responsible for loss or injury occurring on the line of a connecting carrier. *St. Louis Southwestern Railway Co.* v. *Kilberry*, 83 Ark. 87; *Kansas City, Ft. S. & M. Rd. Co.* v. *Washington*, 74 Ark. 9; *St. Louis, I. M. & So. Ry. Co.* v. *Randle*, 85 pellee for his signature.

The undisputed testimony shows that the cattle had been loaded in the cars and accepted by the railroad company to be delivered at a point beyond its own lines, and that the train was in the act of starting before the contract was submitted to appellee for his signature.

Appellee demanded an unrestricted liability contract because he did not intend to accompany the cattle, and for that reason, if any loss or injury occurred to the cattle, he would not know whether it happened on the line of the initial or the connecting carrier. He was refused any other contract than the one exhibited, and was compelled to sign it in order to ship his cattle. He was refused the opportunity to ship on unrestricted terms, and the restrictions are void. The contract, therefore, was not properly evidence in this case, and no defense can be based upon it. It passes out of the case. *St. Louis & San Francisco Rd. Co.* v. *Wells*, 81 Ark. 469; *St. Louis & San Francisco Rd. Co.* v. *Burgin*, 83 Ark. 502; *St. Louis & S. F. Rd. Co.* v. *Pearce*, 82 Ark. 353; *Railway Co.* v. *Cravens*, 57 Ark. 112.

The case stands as if appellant had accepted the cattle consigned from Ola, Arkansas, to National Stock Yards, Illinois,

without making a contract restricting its liability to loss or injury over its own line of railway.

Hence, under the rule above declared, appellant was liable for any loss or injury occurring on the line of its connecting carrier, and the judgment is affirmed.