# E. H. BLANKENSHIP, Appellant, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Respondent.

### Springfield Court of Appeals, January 8, 1912.

1. **CARRIERS OF LIVE STOCK: Contract Limiting Liability: Shipper Given No Option.** In an action against a railroad compay for damages for killing two horses while the same were being shipped over defendant's road, the defendant admitted the loss of the horses but pleaded the shipping contract, which limited the liability of defendant to $100 per horse The evidence on the part of plaintiff disclosed that he was told by defendant's agent, that if his horses were shipped over defendant's road he would have to sign the contract as presented, and that it was the kind of contract that all shippers were required to sign, and according to plaintiff's testimony he was given no opportunity to ship under any contract other than the one limiting defendant's liability. *Held*, that under the evidence the trial court was not justified in instructing the jury that as a matter of law the contract was binding on the plaintiff.

2. **CARRIERS OF FREIGHT: Repeal of Freight Rates.** The Acts of 1905 and 1907 repealed all existing statutes of this state, regulating freight charges and although an injunction has been issued restraining the authorities of this state from enforcing the rate provisions fixed in these acts, and said acts have been declared unconstitutional and invalid; yet, as the Act of 1905 expressly repealed the prior statute, it is no longer the law, even though the subsequent acts are held unconstitutional.

3. **CARRIERS OF LIVE STOCK: Contract Limiting Liability: Option to Shipper.** It is not essential in order to validate a contract limiting the carrier's liability, that the option or opportunity to ship the goods under the common-law liability be actually presented to the shipper, but it is sufficient that such opportunity would have been given if the shipper had demanded it.

4. ————: ————: **Shipper Given no Option.** Where the local agent of a railroad company denies a shipper the opportunity to contract for the common-law liability and informs him that there were no other terms or conditions upon which he could have his property transported, then there was no opportunity offered to contract for shipment on unrestricted terms and a special contract entered into under such circumstances, which limited the carrier's common-law liability, would be invalid.

5. ———: ———: **Conflicting Decisions.** The Springfield Court of Appeals, in the case of McElvain v. Railroad, 151 Mo. App. 126, *held* as valid a shipping contract covering a shipment of horses, limiting the carrier's liability to $100 per head, when entered into in good faith, and the rate charged is less than the rate charged where no limited value is placed upon the horses shipped and although this decision is in conflict with the decision of the Kansas City Court of Appeals, in Leas v. Railroad, 136 S. W. 963, the Springfield Court of Appeals sees no reason for overruling its decision in the McElvain case.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard,* Judge.

REVERSED AND REMANDED.

*L. M. Henson* for appellant.

(1) The law fixes the maximum rate defendant was allowed to charge for the shipment in question at carrier's risk, this being an intra-state shipment and the contract shows on its face that defendant charged all that it was allowed under the law to charge for the shipment without any limitations on its common-law liability. It could not, therefore, call the same a lower or a reduced rate. Paddock v. Railway, 155 Mo. 524. (2) The law has delegated to the board of railroad and warehouse commissioners of this state authority to fix reasonable maximum freight rates and make schedules governing the shipment of all classes of freight, including live stock, and such rates and schedules are binding on both the shipper and carrier. Session Acts 1875, p. 113; R. S. 1909, secs. 3251-3257. (3) The contract offered in evidence by the defendant does not bring this case within the rule laid down in Harvey v. Railroad, 74 Mo. 538 and Mires v. Railway, 134 Mo. App. 379, but on the contrary the law applicable to this case has been clearly defined in the following cases; McFadden v. Railway, 92 Mo. 343; Ficklin v. Railway, 117 Mo. App. 221; Creel v. Railway, 137 Mo. App. 27; Van Buskirk v. Railway, 143 Mo. App. 707; Kellerman v. Railway,

136 Mo. 177; Paddock v. Railway, 155 Mo. 524; Potts v. Railway, 17 Mo. App. 394; Doan v. Railway, 38 Mo. App. 408; Vaughn v. Railway, 62 Mo. App. 461.

*W. F. Evans* and *W. J. Orr* for respondent.

(1) That a common carrier may by contract based on rates limit its common law liability. Mires v. Frisco, 114 S. W. 1052; Harvey v. Railroad, 74 Mo. 538; Hart v. Railroad, 112 U. S. 331; Snider v. Express Co., 63 Mo. 383; Kethen v. Express Co., 52 Mo. 390; Reed v. Railroad, 60 Mo. 199; Rice v. Railroad, 63 Mo. 314; Sturgeon v. Railroad, 65 Mo. 569; O'Brien v. Kinney, 74 Mo. 125; Kellerman v. Railroad, 136 Mo. 177; McFadden v. Railroad, 92 Mo. 343; Wyrick v. Railroad, 74 Mo. App. 406; Duvenrick v. Railroad, 57 Mo. App. 556; Gerber v. Railroad, 63 Mo. App. 148; Patterson v. Railroad, 56 Mo. App. 662; Phoenix Mfg. Co. v. Railroad, 101 Mo. App. 456. (2) It is the duty of the shipper to read the contract before or at the time he signs the same. Grace v. Adams, 100 Mass. 507; Railroad v. Cleary, 77 Mo. 638; O'Brien v. Kinney, 74 Mo. 126; Ins. Co. v. Railroad, 72 N. Y. 93; Durgin v. Express Co., 20 Atl. (N. H.) 328; Macfarlane v. Express Co., 137 Fed. 982; Montague v. Hyde, 82 Fed. 682; Dunbar v. Railroad, 40 S. E. (S. C.) 884; Ullman v. Railroad, 87 N. W. (Wis.) 41; Railroad v. Weakley, 8 S. W. (Ark.) 137; Railroad v. Dexter, 39 So. 634. (3) The shipper is presumed to be acquainted with the contract which he signs, whether read or not, and in the absence of fraud or mistake, will not be permitted to say he did not know. Railroad v. Weakley, 50 Ark. 397; 5 Am. and Eng. Ency. of Law, 293; Cau v. Railroad, 194 U. S. 427; Arthur v. Railroad, 194 U. S. 427; Railroad v. Cleary, 77 Mo. 638; Gerber v. Railroad, 63 Mo. 145; Wyrick v. Railroad, 74 Mo. App. 406; Ballou v. Earle, 17 R. I. 441; Durgin v. Express Co., 20 Atl. (N. H.) 328; Macfarlane v. Express Co., 137 Fed. 982; Jones v. Railroad,

45 A. and E. R. Cases (Ala.), 323; Arthur v. Railroad, 139 Fed. 130. (4) It is a reasonable regulation on the part of carriers to base their rates on the value of the property shipped and especially is this true of live stock. Musser v. Express Co., 1 Fed. 385; Graves v. Railroad, 50 Am. Rep. 283; Express Co. v. Foley, 46 Kan. 457; Alair v. Railroad, 53 Minn. 160; Express Co. v. Carnahan, 64 N. E. 647; Johnston v. Railroad, 55 A. and E. cases, 349; Railroad v. Fraloff, 100 U. S. 27; Besheer v. Railroad, 131 S. W. 767; McElrain v. Railroad, 131 S. W. 736. (5) The carrier's agent is not required to read or explain the contract to the shipper, or to call the latter's attention to the limitations therein contained, unless the shipper requests the agent to do so. Railroad v. Cleary, 77 Mo. 634; Kellerman v. Railroad, 136 Mo. 177; Express Co. v. Foley, 46 Kan. 457; Dunley v. Railroad, 20 Atl. (N. H.) 327; Railway v. Harwell, 45 A. and E. R. Cases, 358. (6) Live stock contracts of shipment when signed by shipper and carrier are binding on both, if reasonable and are not opposed to the law of public policy, and they cannot be impeached except for fraud or mistake entering into their execution and the burden of pleading and proving such fraud or mistake rests with the party asserting it. Patterson v. Railroad, 56 Mo. App. 662; Railroad v. Cleary, 77 Mo. 638; Grace v. Adams, 100 Mass. 507; Railroad v. Plow Co., 41 N. E. (Ind.) 480; Johnston v. Railroad, 55 A. and E. R. Cases (S. C.) 349; Ballou v. Earle, 33 Am. St. 883; Jennings v. Smith, 106 Fed. 142. (7) All recitals contained in the live stock contract, signed by the parties, which limit the carrier's common law liability, are prima facie true, while those made by the shipper against his interest, are conclusively presumed to be true. Railroad v. Cleary, 77 Mo. 634; Mc-Fadden v. Railroad, 92 Mo. 343; Hart v. Railroad, 112 U. S. 331; Cau v. Railroad, 194 U. S. 427; Gerber v. Railroad, 63 Mo. App. 145; Wyrick v. Railroad, 74 Mo. App. 406; O'Brien v. Kinney, 74 Mo. 126. (8) It is not

material that the rates and the limitations contained in the contract were not discussed before or at the time the contract was signed, or that nothing was said about these. Wyrick v. Railroad, 74 Mo. App. 406; Cau v. Railroad, 194 U. S. 427.

GRAY, J.—This suit was instituted to recover the value of two horses that were killed while being shipped from St. Louis to Matthews, in this state. The horses were delivered to the company at Broadway station, St. Louis, and for their shipment an ordinary box car was used, and in order to allow proper ventilation, one of the doors was left open and three strips of flooring were nailed across the open space to prevent the horses from falling out of the car. The plaintiff offered testimony tending to prove that he called for a grain door, but was told by the agents of the defendant that none could be had, and that the flooring would be sufficient. Some place between St. Louis and Matthews two of the horses fell out of the car and defendant admits their loss. In fact the sole contention of the defendant was, in the trial court, and now is, that by a special contract, entered into at the time of the shipment, defendant's liability is limited to $100 per horse. The trial court took this view and instructed the jury that plaintiff was only entitled to recover $100 per head for his horses, and a verdict was returned in accordance with the instruction, and judgment entered thereon, and plaintiff appealed to this court.

The defendant offered in testimony the special contract relied on, and containing the following stipulations:

"THIS AGREEMENT, made in duplicate at St. Louis, Bdy. station this 23rd day of December, 1909, between the St. Louis and San Francisco Railroad Company, herein called the 'Company,' and E. H. Blankenship, herein called the 'Shipper;' Witnesseth, that

in consideration of the reduced rate upon which this shipment is transported, and of the mutual promises herein set forth of the parties hereto, it is agreed between said parties as follows:

"1.    The Company shall transport the following cars of live stock, and the parties in charge thereof, viz., one car, said to contain nine head of horses consigned to E. H. Blankenship, consignee, from St. Louis station to Matthews, Mo., station on the line of this Company; and if the destination is beyond the line of this Company, shall deliver the same at said station to a carrier whose line may form a part of the route to Matthews, Mo., the place of destination; at the reduced rate of 18c per cwt., or—which is less than the rate for shipments at carrier's risk. . . . .

"12.    The valuations of the live stock which are agreed upon are the actual cash values of the same at the time and place of shipment, but in no case, however, to exceed one hundred dollars ($100) for each horse or pony, gelding, mare or stallion, mule or jack; fifty dollars ($50) for each ox, bull or steer; thirty dollars ($30) for each cow; ten dollars ($10) for each calf or hog; three dollars ($3) for each sheep or goat. In case of death, loss or total injury of the live stock from any cause for which the Company may be liable, payment shall be made therefor at said valuations, and in case of partial injury the amount of damages paid shall not exceed the proportions said partial injury shall bear to death, loss or total injury."

The plaintiff offered testimony that when he applied for the car, and at the time the shipment was made, the agent handed him the contract to sign and stated that it was the kind of a contract that all shippers signed, and the kind he would have to have if he shipped his horses over the road.

In behalf of the defendant, a Mr. Bather, tariff clerk of the defendant company, testified that the distance from St. Louis to Matthews was 174 miles, and

the regular tariff rate eighteen cents per hundred pounds, and that the minimum weight on a thirty-six foot car was 23,200 pounds; that this rate was based on horses of the valuation of $100; that where the declared valuation exceeded the $100, an additional freight of ten per cent per hundred pounds or per car for each 100 per cent or fractional part thereof of additional value, was added.

The agent who executed the contract in behalf of the defendant, testified that to the best of his knowledge he had no conversation at all with the plaintiff; that he tendered him the contract and he signed it; that he never had any one question one of the contracts and "that everybody signed it in a jiffy. I have never had any kick on the contract yet at this time; it has been signed right on the jump."

The defendant admits that the rate charged is in excess of the rates allowed under the laws of this state for such shipments, but claims that in as much as the Acts of 1905 and 1907 repeal all existing statutes of this state regulating freight charges, and that an injunction has issued restraining the authorities of this state from enforcing the rate provisions fixed in the acts above mentioned, there is no law in Missouri fixing freight rates, and therefore, the defendant is allowed to fix reasonable rates.

An injunction has been issued, as above stated, and the court has held that said acts are unconstitutional and invalid. [St. Louis & San Francisco R. R. Co. v. Hadley, 168 Fed. 317.] Under the law as it existed prior to 1905, the defendant could not have charged more for shipping the carload of horses than it did charge, and therefore, there was no reduction in charges if that statute is in force. But the Act of 1905 expressly repealed the prior statute, and it is no longer the law, even though the subsequent acts are held unconstitutional. [State ex rel .v. Wardell, 153 Mo. 319, 54 S. W. 574.]

The plaintiff's reply alleged that the contract was void, as he was given no opportunity to ship his horses under a higher rate of freight at carrier's risk, but was only given the option of shipping under said contract or not at all; that he made inquiry about the contract and was told that it was the regular contract which the company required all shippers to sign, and that he would have to sign the same if he shipped his horses over the defendant's road.

In McElvain v. this defendant, 131 S. W. 736, Judge Nixon, in speaking for this court construing a similar contract, said: "If a carrier did not allow the shipper the privilege of choosing between a restricted and a full liability, or if the pretended agreed valuation is not such in fact, but simply a cloak for a limitation of liability to a fixed sum which is less than the real value, the contract will not be valid as against a loss due to negligence.

The Supreme Court in Paddock v. The Railroad, 155 Mo. 524, 56 S. W. 453, said: "Upon the whole case if it appears that plaintiff was given his option between signing a regular contract at the legal rate or a special contract at a reduced rate and elected to take the special contract, he will be bound thereby. But on the other hand, if he was given only an option between contract at an illegal rate and a special contract at a reduced rate, and took the special contract, he will not be bound thereby because it is not based on a valuable or legal consideration. For the shipper is entitled to know what the legal rate is, and to take his choice between shipping at that price with the responsibility attaching thereto, or to pay the reduced rate and to take the risk specified in such special contract."

A contract presented to a shipper after his cattle were loaded, and which he was required to sign or unload his cattle, was held void in Railroad Co. v. Reynolds, 17 Kans. 251. In Railroad Co. v. Dill, 48 Kans. 210, 29 Pac. 149, the shipper's horses were in the car

and the company's agent demanded that he sign a contract presented to him or his horses would not go on the train then about to start. The court held the special contract void. To the same effect is Railroad v. Carter, 29 S. W. 565. The Supreme Court of North Carolina, in Parker v. Railroad, 133 N. C. 335, 45 S. E. 658, held the stipulation in a shipper's contract void where the terms of the contract were the only ones upon which the carrier would undertake the service. The Supreme Court of Arkansas, in Chicago R. I. & P. R. Co. v. Cotton, 87 Ark. 339, 112 S. W. 742, held that where the shipper was refused any other contract than one limiting the carrier's liability, and was required to sign it in order to get his cattle shipped, that such contract was no defense to the shipper's claim for damages. The Supreme Court of Indiana, in Cleveland C. C. & St. L. R .R. Co. v. Hollowell, 172 Ind. 466, 88 N. E. 680, held that the owner may rightfully demand that his property be received and carried under the common-law liability, and a contract limiting such liability, to which he was obliged to assent, in order to secure transportation, could not be considered as having been freely and fairly entered into. The same doctrine is declared by the Supreme Court of South Dakota, in Kirby v. Western Union Teleg. Co., 55 N. W. 759. In Ill. C. R. Co. v. Lancashire Ins. Co., 79 Miss. 114, 30 So. 43, the Supreme Court of Mississippi held that if there be but one contract and one rate offered to the shipper and no option or choice be given him, then a special provision limiting the carrier's liability is without consideration and void.

It is true it has been held in a large number of cases that it is not essential in order to validate a contract limiting the carrier's liability, that the option or opportunity to ship the goods under the common-law liability, be actually presented to the shipper, but it is sufficient that it would have been given if the shipper had demanded it. This was held in Duvenick v. Rail-

road, 57 Mo. App. 550. On the other hand, if the local agent with whom the shipper made the contract, denied him the opportunity to contract for the common-law liability, and informed him that there were no other terms or conditions upon which he could have his property transported, then there was no opportunity afforded to contract for a shipment on unrestricted terms, and a special contract is void. St. Louis & San Francisco R. R. Co. v. Wells, 81 Ark. 469, 99 S. W. 534.

In the case of this defendant v. Gorman, 79 Kans. 643, 100 Pac. 647, 28 L. R. A., N. S. 637, the Supreme Court of Kansas, in speaking of the law of these contracts said: "If a railroad company has two rates for the transportation of goods or stock, one if the goods or stock are carried under the common-law liability and the other if carried under a limited or special contract,—the shipper must have real freedom of choice. He cannot be denied the right to have his goods carried by the carrier under its common-law liability; but if he desires, and if the statute permits and public policy does not forbid, he may enter into a special contract with the carrier, limiting the common-law liability. But a common carrier cannot exact of a shipper his signature to a special contract limiting the common-law liability as a condition precedent of shipping or transporting stock, because, in such a case, the carrier resorts to unfair means. A contract thus exacted is not freely and fairly entered into."

The evidence discloses that plaintiff applied for a car to ship his horses; that one was furnished, and a part of the horses loaded before he went to the station to see the agent relating to the contract of shipment, and that he was plainly told by the agent that if his horses were shipped over defendant's road, he would have to sign the contract, and further, that it was the regular contract that all shippers were required to sign. The agent corroborated this as to the character of the

contract, and testified that all shippers signed it "on the jump."

Under the testimony the court was not justified in telling the jury as a matter of law, that the contract was binding on the plaintiff. The plaintiff was away from home, and his nine head of horses were then practically in the possession of the carrier, and according to his testimony, he was given no option, but was required to sign the contract or his stock would not be carried.

It must be remembered that these are not ordinary contracts. The shipper is usually at the mercy of the carrier, and the contracts are usually made as it was in this case. The shipper applies for a car and it is given to him, and about the time the stock is loaded, the agent presents to him a long contract, all prepared and complete, with the exception of a general description of the property and the shipper's signature.

There is another thing that judges in deciding these cases cannot help but notice, and that is, that the shipper is invariably handed, for his signature, a contract limiting liability. This is due solely to the fact that such a contract is more advantageous to the carrier than the ordinary one, and as a rule, the real purpose is to permit the carrier to escape its real liability. This is true of the contract under consideration. The rate charged is equal to or in excess of any rate allowed under the laws of this state for many years. This contract recites: "The shipper acknowledges that he has had the option of shipping the live stock at carrier's risk, at a higher rate, or under this contract, at a lower rate, and that he has elected to make this contract and accept the lower rate." Now the undisputed evidence shows that he had been given no such option. Even the agent who made the contract said nothing was said about it, but he simply tendered to him the regular contract that he gave everybody, and that the plaintiff

160 App.—41

signed it, as the others did, "on the jump." This clause was put in the contract, not as a true statement of the facts, but for the purpose of estopping the plaintiff from denying that he had been given such an option when the question should arise after plaintiff had made his claim based upon the failure of the carrier to discharge its duty.

There is a conflict between the decisions of this court in McElvain v. Railroad, supra, and the Kansas City Court of Appeals in Leas v. Railroad, 136 S. W. 963. In the Leas case, the Kansas City Court of Appeals held that where the rate charged is the full rate charged for a certain class of property, that it is not a reduced rate, although the company had a higher rate for property of a higher valuation. In other words, the Kansas City Court of Appeals holds that where the Company has but one rate on horses valued at $100,. and the contract of shipment attempted to differentiate that rate into a reduced one, by comparing it with a higher rate charged for horses of higher value, such a comparison is improper, and the company would be liable in case of loss of the animals through its negligence, for the full value of the animals, no matter how much it might be in excess of the $100. In the McElvain case, we held such a contract valid, if entered into in good faith.

This question has not been briefed in this case, and is not urged by the appellent, and therefore, it is not necessary for us to decide it, further than to say we can see no reason for overruling our decision in the McElvain case.

The premises considered, the judgment will be reversed and the cause remanded. All concur.