**WILKINSON, Collector of Internal Revenue, v. MUTUAL BLDG. & SAV. ASS'N.**

(Circuit Court of Appeals, Seventh Circuit. June 2, 1926.)

No. 3690.

**1. Statutes ⬥188.**

Words of statute are to be taken in sense in which they will be understood by that public in which they are to take effect.

**2. Internal revenue ⬥19(1).**

The words, "known generally as corporate securities," in Revenue Act of 1921, tit. 11, schedule A, § 1107, subd. 1 (Comp. St. Ann. § 6318p), must be *held* to refer to bonds, debentures, or certificates of indebtedness as well as to those instruments specifically referred to as being issued by corporations.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Security.]

**3. Evidence ⬥29.**

Circuit Court of Appeals must take judicial notice of state law relating to building and loan associations, in determining what provision of Revenue Act applies to instruments issued by association.

**4. Evidence ⬥20(1).**

It is common knowledge that purpose of building and loan associations is to enable persons of moderate means, by small monthly contributions, to become home builders and owners, and that associations have no business except accumulation of money from sale of shares and lending to members.

**5. Internal revenue ⬥19(1).**

Under Revenue Act 1921, tit. 11, § 1101 (Comp. St. Ann. § 6318j), nonnegotiable instrument, taken by building and loan association as evidence of indebtedness by member, *held* not taxable as bonds of indebtedness or securities, within schedule A, § 1107, subd. 1 (Comp. St. Ann. § 6318p), although under seal.

In Error to the District Court of the United States for the Eastern District of Wisconsin.

Action by the Mutual Building & Savings Association against A. H. Wilkinson, Collector of Internal Revenue. Judgment for plaintiff (8 F.[2d] 183), and defendant brings error. Affirmed.

M. H. Adams, of Washington, D. C., for plaintiff in error.

Edwin J. Gross, of Milwaukee, Wis., for defendant in error.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. The only question here is whether defendant in error, called plaintiff, a Wisconsin corporation, whose business is "the creation and care of a mutual savings fund for the payment to it by its members, and the making of loans to its members therefrom, upon real estate securities and upon such other securities as are authorized by the laws of the state of Wisconsin," should have been required, by plaintiff in error, called defendant, collector of internal revenue, to pay a stamp tax of only two cents per hundred, instead of five cents per hundred, on the instrument in the margin.[1]

Plaintiff's contention is that the instrument is taxable under section 1107, subd. 5,

---

[1] Milwaukee, Wisconsin, ———, 19—.

Received of the Mutual Building & Savings Association, of Milwaukee, Wisconsin, ——— dollars, ($———), as a loan on ——— shares of class ——— installment (or full paid) stock in said association, evidenced by passbook and certificate number ———, which said shares of stock ——— hereby assign, transfer, and surrender to said association as collateral security, for the repayment of said money so loaned to and received by ——— from said association. ——— agree to pay monthly not less than ——— dollars, which shall be applied as follows: (This note is also secured by mortgage of even date.)

First. To the payment of interest due on said loan amounting to ——— dollars per month.

Second. To the payment of premium for precedence due on said loan amounting to ——— dollars per month.

Third. To the payment of any fines, or other charges against ——— in pursuance of the by-laws of said association.

Fourth. To the payment of the dues on said stock borrowed amounting to ——— dollars per month.

Said payments shall be continued until the dues so credited on said stock, together with the dividends declared thereon, shall equal the amount loaned.

Whenever ——— six months in arrears in the payment of any interest, premiums, fines, dues or any other charges then the whole amount of said loan shall at once become due and payable at the option of said association, and ——— said stock may without prior notice to ——— be applied at its then withdrawal value in liquidation of any claims said association may have against ——— hereunder or otherwise, and said association may at any time take judgment against ——— for any deficiency there may be.

This instrument shall be in every respect subject to the articles of incorporation, by-laws, rules and regulations of said association and lawful amendments thereto.

$———.　　　　　　　　　　———. [Seal.]
　　　　　　　　　　　　　　———. [Seal.]
———.

tit. 11, schedule A, of the Act of 1921 (42 U. S. Stats. L. p. 305 [Comp. St. Ann. Supp. 1923, § 6318p]):

"5. Drafts or checks (payable otherwise than at sight or on demand) upon their acceptance or delivery within the United States whichever is prior, promissory notes, except bank notes issued for circulation, and for each renewal of the same, for a sum not exceeding· $100, 2 cents; and for each additional $100, or fractional part thereof, 2 cents."

And the defendant contends that subdivision 1 of the act governs:

| Sec. 1107, Subd. 1, Schedule A, Title XI, Act of 1921. | Sec. 807, Subd. 1, Schedule A, Title VIII, Act of 1917. |
|---|---|
| "1. Bonds of indebtedness: On all bonds, debentures, or certificates of indebtedness issued by any person, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 5 cents: Provided, that every renewal of the foregoing shall be taxed as a new issue: Provided, further, that when a bond conditioned for the repayment or payment of money is given in a penal sum greater than the debt secured, the tax shall be based upon the amount secured." 42 U. S. Stats. L. p. 303. | "1. Bonds of indebtedness: Bonds, debentures, or certificates of indebtedness issued on and after the first day of December, nineteen hundred and seventeen, by any person, corporation, partnership, or association, on each $100 of face value or fraction thereof, 5 cents: Provided, That every renewal of the foregoing shall be taxed as a new issue: Provided further, that when a bond conditioned for the repayment or payment of money is given in a penal sum greater than the debt secured, the tax shall be based upon the amount secured." 40 U. S. Stats. L. p. 321 (Comp. St. § 6318h). |

Plaintiff was required to, and did, pay under subdivision 1. The court overruled a demurrer to its declaration, wherein was asked judgment for the difference between the two rates, and gave plaintiff judgment for that difference.

[1, 2] The Supreme Court, in United States v. Isham, 84 U. S. (17 Wall.) 496, 21 L. Ed. 728, laid down the rule:

"2d. The words of the statute are to be taken in the sense in which they will be understood by that public in which they are to take effect. * * *"

Following that rule, the meaning of subdivision 1 is quite clear. The act of 1917 makes no definitions. The act of 1921 does, and says, in part, that "person," as used in the act, "includes partnerships and corporations"—the word "person," as used in subdivision 1, must be read as though written "persons, partnerships or corporations," so that the words "all instruments, however termed, issued by any corporation with interest coupons or in registered form," are not to

be read as the only words in the section relating to securities issued by corporations. The evident purpose of inserting those words was to cover all such instruments as ingenious persons might devise to take the place of, though not generally known as, "bonds, debentures or certificates of indebtedness." The words, "known generally as corporate securities," must be held, not only by reason of the subject-matter of the section, but also by reason of the punctuation, to refer to "bonds, debentures or certificates of indebtedness," as well as to those instruments specifically referred to as being issued by corporations. If those words had been intended to relate merely to words immediately preceding them, the comma between the the words "form" and "known" would have been omitted.

Again, instruments called "bonds, debentures or certificates of indebtedness" have always been the designating words for corporate securities, and until recently have been almost exclusively so used; we have not known that the word "debenture" has ever been otherwise used.

Subdivision 1 must have been intended by Congress to cover those instruments, not issued in the course of· daily business, or in the course of business at all, but often outside the business of the individual or corporation issuing them, for the securing of long-time loans and for other purposes. Subdivision 5 covers the well-known time checks or drafts and certain promissory notes such as are customarily used in the ordinary affairs of the makers. A reasonable and legitimate dividing line seems to have been found and adopted.

What is the instrument in question?

[3, 4] We must take judicial notice of the Wisconsin law relating to building and loan associations. It is a matter of common knowledge that as to such associations there are certain fundamentals: (a) That their purpose always has been to enable persons of moderate means, by small monthly contributions, to become home builders and owners; (b) except occasional borrowings to cover emergencies, they borrow no money and have no business other than the accumulation of money from the sale of their shares, usually on monthly payments, to their members, and the lending of that money to their members, who wish to buy or build homes, so that the sole profit comes from the use, by the borrowing members, of the money paid in by all the members on their respective shares of stock.

The Wisconsin law as to loan associations

provides that obligations for borrowed money shall be evidenced by a nonnegotiable note or bond, secured by a real estate mortgage. The instrument in question purports to be a receipt for a loan on the member's shares of stock in the association, and recites a transfer of those shares as collateral security. Then follow the various stipulations as to payments: (a) Interest; (b) premium for precedence; (c) fines or other charges under by-laws; (d) dues on stock. There are stipulations as to rights in case of six months' default, and the whole agreement is made subject to articles of incorporation, by-laws, rules, and regulations, and lawful amendments. Places for signature and seal are at the end.

[5] Much stress is placed upon the fact that it is an instrument under seal. In our view of subdivision 1, that fact has little significance, unless it appears from the whole instrument that it is one known as a corporate security. We have not known of a corporate security that has not (1) negotiability; (2) a fixed or ascertainable time of full payment; and (3) a fixed sum to be repaid. The instrument here does not have any one of those things. It is not negotiable, nor is there any intent that it shall be negotiated. Its time of full payment is not fixed, except in case of default, nor can the time be ascertained from the instrument. The amount to be repaid is not known, nor can it be ascertained from the instrument. Both the amount to be repaid and the time when final full payment is to be accomplished depend, except in case of default, wholly upon the arrival of the time when the dividends from dues, fines, premiums, interest, etc., paid by all members, equal the loan or mature the borrower's stock. It is and is intended that it shall be an intermember and an intermember and society arrangement, to aid in effectuating the purposes of the organization, and hence is made subject to the charter, by-laws, rules, and regulations of the association, and even to the amendments thereof. What they are, or may be, is not disclosed in the instrument.

In section 1101, tit. 11, Stamp Taxes, Act of 1921 (42 U. S. Stats. L. p. 301 [Comp. St. Ann. Supp. 1923, § 6318j]), as items not to be taxed, are:

"Stocks and bonds issued by co-operative building and loan associations which are organized and operated exclusively for the benefit of their members and make loans only to their shareholders. * * *"

In the instrument, the shares are assigned as collateral security, and the substance of the thing done between the association and its members is not to repay the money advanced but to mature the stock from payment of dues, etc., until default, or until the stock value is at least equal to the advancements, and then the one is credited against the other. Interest on the whole sum advanced is paid to maturity. These matters are deducible from the provisions of the instrument, viz.:

"'Said payments' (interest, etc.) 'shall be continued until the dues so credited on said stock, together with the dividends declared thereon, shall equal the amount loaned.'"

We are satisfied this is not an instrument within the meaning of section 1, and that the transaction in question should not have been taxed thereby, and that the judgment for the demanded difference should stand.

The judgment is affirmed.