## STIMPSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9219.

Circuit Court of Appeals, Eighth Circuit.

Jan. 25, 1932.

Rehearing Denied March 1, 1932.

William M. Fitch, of St. Louis, Mo. (George H. Moore, of St. Louis, Mo., on the brief), for petitioner.

Norman D. Keller, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Hartford Allen, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before VAN VALKENBURGH, BOOTH, and GARDNER, Circuit Judges.

BOOTH, Circuit Judge.

This is a petition for review of an order of the Board of Tax Appeals entered September 30, 1930, as amended by an order of February 12, 1931, redetermining deficiencies in the income taxes of petitioner for the calendar years 1922, 1923, and 1924. The two latter years only are here involved.

The question presented is whether certain transactions by petitioner relative to securities owned by her were sales of said securities resulting in taxable gain to petitioner.

The relevant statutes are section 213 (a) of the Revenue Act of 1921 (c. 136, 42 Stat. 227, 237), and section 213 (a) of the Revenue Act of 1924 (c. 234, 43 Stat. 253, 267, 26 USCA § 954 (a). The two sections are substantially identical; the former reading, so far as here material, as follows:

"Sec. 213. That for the purposes of this title * * * the term 'gross income'—

"(a) Includes gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property. * * *"

The facts were stipulated; the more important are substantially as follows: Mrs. Stimpson, the petitioner, during the time of the transactions involved, was an inhabitant of Missouri. On May 14, 1923, she was the owner of certain securities, having been the owner of some of them since August 1, 1920, and of others since July 13, 1921. The securities were in the custody of the State National Bank of St. Louis, Mo. On May 14, 1923, she wrote the following letter:

"St. Louis, Missouri. May 14, 1923. "State National Bank, St. Louis, Missouri.

"Gentlemen: You are holding for my account in your safe keeping department certain bonds and other securities.

"I hereby authorize you to sell these bonds and securities on or between this date and May 30th and place proceeds of the same to my account, and I also hereby authorize you to purchase for my account United States Treasury Certificates of such issue as you may be able to buy, charging the amount to my checking account.

"Further, sometime during the month of June I would like for you to purchase back the first mentioned bonds and securities for my account and pay for the same with the

proceeds of the sale of the United States Treasury Certificates purchased for me as authorized above.

"Yours truly,

"[Signed] Dorothy Baker Stimpson.

"P. S.—You are authorized to charge my account one-eighth of one per cent., covering the above transactions, as your commission.

"[Signed] Dorothy Baker Stimpson."

The bank received the letter and acted as follows: It placed a valuation upon the securities, using the market value where available; and, where not available, used an approximate value based upon the par value, income produced, supposed solvency of maker, and other information. The total amount of such valuation was $104,000. The bank caused this amount to be entered as a credit on the books of the bank in favor of the petitioner, and caused the securities and their respective valuations to be entered on the books of the bank as assets of the bank amounting to $104,000. The bank then charged the account of petitioner with $104,000, took out of its assets United States Treasury certificates then rated at $104,000, and placed them in the hands of an officer of the bank for petitioner. This same officer of the bank had theretofore had the custody of the securities owned by Mrs. Stimpson. Thereafter, and in June, 1923, the bank took back into its assets the Treasury certificates valued at $104,000 and placed a credit to the account of Mrs. Stimpson of $104,000. The bank then charged Mrs. Stimpson's account with $104,000, and the said officer of the bank thereafter held the said securities for Mrs. Stimpson. The various entries and credits were entered as parts of the same transaction.

Mrs. Stimpson did not know at the time the details of the transactions except as they appeared on her monthly statements from the bank, and these did not show the source from which the credit items had been obtained nor to whom the debit items had been paid. Mrs. Stimpson paid the bank one-eighth of one per cent. of $104,000 for handling the transactions.

Transactions similar in substantial respects took place in May and June, 1924, Mrs. Stimpson having written to the bank in May, 1924, a letter similar to the letter of May 14, 1923.

The valuation placed on the securities in 1924 (some additional securities having been added) was $138,000. June 2, 1924, the bank

55 F.(2d)—52

sent to Mrs. Stimpson, who was then in Paris, France, the following letter:

"State National Bank,

"St. Louis, Mo.        June 2nd, 1924.

"Mrs. Dorothy Baker Stimpson, 58 Rue de Vaugirard, Paris, France.

"Dear Mrs. Stimpson: We enclose statement of your account to the close of business May 31st, 1924, together with cancelled checks and memorandums showing the various credits. The withdrawal of $5,100.00 on the 31st ult. was made by us and the amount invested in U. S. Treasury certificates. We have sold the certificates again and your account has been credited $5,100.00 to cover.

"We charge your account $1,000.00 and send you, herewith, our two drafts on the American Exchange National Bank of New York for $500.00 each payable to your order.

"We also handled, in the same manner as last year, your securities left with us for safekeeping. We disposed of the securities, with the exception of the Liberty Bonds, at the par value of $138,000.00, investing that amount in U. S. Securities. We have repurchased the U. S. securities and have used the amount to buy back your securities so that same stand just as they were before. In your letter of May 14, 1923, you authorized us to charge your account ⅛% of 1% as our commission covering this transaction. We have, therefore, charged your account $172.50.

"Yours very truly,

"[Signed]    E. W. Kleinschmidt,

"Assistant Cashier."

Mrs. Stimpson had no information as to the details of the transactions of 1924 except as disclosed by the foregoing letter.

The United States Commissioner of Internal Revenue later examined these various transactions; concluded that they involved sales of securities; ascertained the original cost to Mrs. Stimpson of the securities; computed the gains made by reason of said sales; included said gains in the income account of Mrs. Stimpson for the years mentioned; and determined a deficiency of income taxes of $1,638.05 for the year 1923 and of $4,111.61 for the year 1924. The Board of Tax Appeals affirmed the Commissioner by its decision of May 23, 1930 (19 B. T. A. 1059), as amended by its order of February 12, 1931. The present petition for review followed.

The question presented for consideration of this court is whether the above-outlined transactions of 1923 and 1924 constituted

valid and effective sales of the petitioner's securities which will support the income tax.

From the elaborate and interesting brief for the petitioner, we gather that the main contentions of petitioner are:

(1) That there was no sale because (a) the bank had no power to make a sale to itself; (b) the bank was a trustee and could not properly carry out the transactions as actually performed; (c) a consideration for the sale was absent.

(2) It is further contended: "The direction to repurchase her said securities given by the petitioner shows clearly that she did not intend to pass absolute and final title to her securities under her direction to sell. If the Bank had sold on the open market at the marketable value of her securities, and had bought, at the market value, treasury certificates after the direction of petitioner to sell her securities and purchase certificates, and if the Bank had sold the certificates on the market and repurchased the identical securities which petitioner held at the time of giving the direction to sell, even then a sale would not have been accomplished, for it is apparent that the petitioner did not intend to part absolutely with title to her securities."

We take up the contentions in reverse order. It is to be noted that the language of the instructions to the bank was to *sell* the securities owned by petitioner and *purchase* United States Treasury certificates, and after June, to *"purchase back* the first mentioned bonds and securities" and pay for the same with the proceeds of the *sale* of the Treasury certificates. The language is plain and free from ambiguity. It calls for a *sale* of securities and a purchase of certificates. There is nothing in the language used to suggest an accommodation loan of certificates, as contended by counsel for petitioner. The bank was to be paid a commission for carrying out the transactions. This also indicated the intention to consummate a sale.

One of two inferences would seem to follow: Either that a sale of the securities was intended; or that some deception was intended and the form of a sale used to cover it up. We prefer to draw the first inference.

Considerable discussion is indulged in by both parties as to the purpose of the transactions involved. This purpose is not directly disclosed by the record. However, the Board of Tax Appeals was asked to consider section 12756 of the Revised Statutes of Missouri, 1919, which reads as follows: "Sec.

*12756.  Property held June 1st liable for taxes.*—Every person owning or holding property on the first day of June, including all such property purchased on that day, shall be liable for taxes thereon for the ensuing year."

We, of course, take judicial notice that United States Treasury Certificates were not taxable by the state of Missouri.

What weight was given to the statute as bearing upon the question of intent of petitioner in entering into the transactions in question we do not know. It is earnestly contended by petitioner that the Board of Tax Appeals ought not to have considered the statute at all, and that this court should not consider it. It need hardly be reiterated that federal courts take judicial notice of the statutes of the several states, and, if such statutes have a bearing upon the question of intent of parties in their various transactions, they may be properly considered, notwithstanding they are not embodied in a stipulated statement of facts. Consideration of this statute in connection with the facts disclosed in the record does not raise any ugly imputation against petitioner as her counsel suggests. Actual sale of property prior to the incidence of a tax thereon is not illegal, even though the sale is made in order to avoid liability for the tax. Bullen v. Wisconsin, 240 U. S. 625, 630, 36 S. Ct. 473, 60 L. Ed. 830; United States v. Isham, 17 Wall. 496, 21 L. Ed. 728; Ford v. Nauts (D. C.) 25 F.(2d) 1015; Iowa Bridge Co. v. Commissioner, 39 F.(2d) 777, 781 (C. C. A. 8); Wiggin v. Commissioner (C. C. A.) 46 F.(2d) 743, 745.

The other contention of petitioner, that the transactions in question could not have been sales because the necessary elements of a sale were lacking, will be briefly considered.

It is contended that the bank, being an agent of petitioner, was not competent to be a purchaser at the sales; and that such sales were not authorized by the letters of the petitioner to the bank. A sale by an agent to himself of the property of his principal is not absolutely void, but voidable at the election of the principal. 2 C. J. 702, § 359; Marsh v. Whitmore, 21 Wall. 178, 22 L. Ed. 482; Hoyt v. Latham, 143 U. S. 553, 12 S. Ct. 568, 36 L. Ed. 259; Hammond v. Hopkins, 143 U. S. 224, 251, 12 S. Ct. 418, 36 L. Ed. 134; note 80 Am. St. Rep. 555, 563.

While it is true that petitioner did not know all the details of the transactions until the fall of 1926, yet since that time, so far as the record shows, there has been no repudiation of them by the petitioner.

Furthermore, it is plainly inferable from the record that petitioner intended that the bank should itself be the purchaser of her securities. The letter of May 14, 1923, directed the bank to buy back in June the very same securities which it had sold in May. The obvious way, if not the only way, to accomplish this, was for the bank to be the purchaser in May and hold until June. Especially is this true since some of the securities had no quoted market value.

The contention that there was no valid sale because no price or consideration for the sale was fixed by the petitioner is also, in our opinion, devoid of merit.

It is to be noted here, again, that there has been no repudiation of the transactions by petitioner. She knew the price at which the securities were sold in 1923, shortly after the sale was made, and the price at which the securities were sold in 1924, shortly after that sale was made. The record shows no protest as to either.

The fixing of the selling price by the bank at a figure somewhat lower than the approximate market value, of which counsel for petitioner apparently complains was plainly to petitioner's advantage rather than to her disadvantage.

In conclusion we may say that we assume that petitioner's purpose in carrying out the transactions involved was lawful. We give to the transactions the construction which we think the facts and circumstances demand, and which we think the parties themselves placed upon them at the time.

That petitioner's federal income taxes have been increased by reason of such transactions was a risk which petitioner ran when she determined the form and nature of the transactions.

We think the order of the Board of Tax Appeals was right, and it is affirmed.