### TRAPP v. METROPOLITAN LIFE INS. CO.

#### No. 9798.

Circuit Court of Appeals, Eighth Circuit.
April 30, 1934.

E. H. McVey, of Kansas City, Mo. (C. A. Randolph and Roeder Wild, both of Kansas City, Mo., on the brief), for appellant.

Henry I. Eager, of Kansas City, Mo. (William C. Michaels, of Kansas City, Mo., LeRoy A. Lincoln, of New York City, and Meservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., on the brief), for appellee.

Before STONE and SANBORN, Circuit Judges, and WYMAN, District Judge.

SANBORN, Circuit Judge.

As of November 15, 1917, the Metropolitan Life Insurance Company issued to Lawrence R. Trapp, age 33, a 52-year endowment policy for $5,000, in consideration of a quarterly premium of $27.45 payable on the 15th day of November, February, May, and August in each year during the life of the policy. In case of the insured's death prior to November 15, 1969, while the policy was still in force, the insurance was payable to his beneficiary. Default was made in the payment of premium due May 15, 1931. The grace period expired June 15, 1931, and the insured died four days later, on June 19th. His wife, Elizabeth Trapp, the appellant, was the beneficiary named in the policy. On May 15, 1931, the cash value of the policy was $900; there were policy loans amounting, with interest, to $864.99, leaving a net cash value or net reserve of $35.01. This amount was sufficient to carry $5,000 of insurance for 224 days. Mrs. Trapp filed proofs of death, and demanded the face of the policy. The company took the position that, under the terms of the policy most favorable to her, she was entitled to extended insurance amounting to $194.50, with interest. It tendered her that amount, which she refused. She brought suit upon the policy; the company answered and renewed its tender, and she replied. Upon the trial, at the close of the plaintiff's case, the court adopted the construction of the policy contended for by the company and directed a verdict for Mrs. Trapp for $213.60, the amount which the company had tendered. From the judgment entered upon the verdict, this appeal is taken, and the action of the court in directing the verdict is assigned and specified as error.

We shall first ascertain what amount Mrs. Trapp was entitled to receive under the terms of the policy.

The policy was made, and to be performed, in Missouri and was governed by the laws of that state. The provisions of the policy with which we are concerned read as follows:

978

"Upon failure to pay any premium or any part thereof when due, this Policy, except as otherwise provided herein, shall immediately lapse. If, however, the lapse occur after three full years' premiums shall have been paid, the owner hereof, provided there be no indebtedness hereon, shall, upon written request filed with the Company at its Home Office together with the presentation of this Policy for legal surrender or for endorsement within three months from the due date of premium in default, be entitled to one of the following options:

"First—A cash surrender value.

"Second—To have the insurance continued for a reduced amount of non-participating paid-up endowment insurance (including any existing additions to the credit of the Policy). * * *

"Third—To have the insurance continued for its original amount as term insurance in whole number of months from due date of premium in default without participation and without the right to loan. * * *

"If the owner shall not, within three months from due date of premium in default, surrender this Policy to the Company at its Home Office for a cash surrender value or for endorsement for paid-up insurance or term insurance as provided in the above options, the policy shall be continued for a reduced amount of paid-up insurance as provided in the second option.

"The values of these options are mathematical equivalents, and have been calculated on the basis of the American Experience Mortality Table with interest at three and one-half per centum per annum (omitting fractions of a dollar per thousand of insurance) less a surrender charge not exceeding in any case two and one-half per centum of the face of the Policy. * * *

"Any indebtedness to the Company under this Policy will be deducted from the cash value; and such indebtedness will also reduce the amount of paid-up insurance or the amount continued as term insurance * * * in such proportion as the indebtedness bears to the cash value at due date of premium in default."

Mrs. Trapp, upon the death of her husband, became at least the equitable owner of this policy, and, within three months from the date of premium default, she had surrendered the policy and demanded payment of it in full. There can be no doubt that she elected to take the greatest benefits which were available to her under the circumstances, and the company so construed her action and tendered to her the largest amount which it believed she was entitled to, namely, term insurance, reduced in such proportion as the insured's indebtedness bore to the cash value of the policy at the time of default.

At the time the policy was issued, there was in force in Missouri a statute which, with amendments which are not here material, has become section 5741, Revised Statutes of Missouri 1929, Mo. St. Ann. § 5741, p. 4388 (see R. S. Missouri 1909, § 6946, R. S. Missouri 1919, § 6151; Laws of Missouri 1923, p. 233). We shall refer to this statute as section 5741, as counsel have done in their briefs. It provides:

"No policies of insurance on life hereafter issued by any life insurance company authorized to do business in this state shall, after payment upon it of three or more annual payments, be forfeited or become void by reason of non-payment of premiums thereon, but it shall be subject to the following rules of commutation, to-wit: The net value of the policy, when the premium becomes due and is not paid, shall be computed upon the actuaries' or combined experience table of mortality with four per cent interest per annum, and after deducting from three-fourths of such net value the unpaid portion of any notes given on account of past premium payments on said policy and any other indebtedness to the company secured by said policy, which notes and indebtedness shall then be canceled, the balance shall be taken as a net single premium for temporary insurance (extended insurance). The amount of such temporary insurance shall be such as is specified in the policy, but never less than the face amount insured by the policy reduced by the unpaid portion of notes and indebtedness aforesaid. * * * *"

At the time this case was tried, on February 8 and 9, 1933, this statute had not been construed by the Supreme Court of Missouri, but it had been construed by the Missouri Courts of Appeals: Wilhelm v. Prudential Ins. Co. of America (Mo. App. 1921) 227 S. W. 897, 898, 899; Alexander v. Northwestern Mutual Life Ins. Co. (Mo. App. 1927) 290 S. W. 452, 455; Dougherty v. Mutual Life Ins. Co. of New York (1931) 227 Mo. App. 570, 44 S.W.(2d) 206, 215, 216.

Under the statute as construed by the Courts of Appeals, if there was, at the time of default in the payment of premium, an amount available for the purchase of extended insurance under the rule of computation prescribed by the statute, then that amount could be used for the purchase of temporary insurance not less than the face value of the

policy; but, if there was no net amount available for the purchase of extended insurance under the statutory method of computation, the statute had no application. In other words, the beneficiary could not, under such circumstances, adopt the statutory amount of extended insurance and the policy method of computing the amount available for its purchase. Dougherty v. Mutual Life Ins. Co., 227 Mo. App. 570, 44 S.W.(2d) 206, 215.

Since in this case, under the statutory method of computation, there would have been no amount available for extended insurance, it would naturally be assumed by the court and by counsel that the statute did not affect the policy; but, after the trial and on April 20, 1933, the Supreme Court of Missouri decided the case of Gooch v. Metropolitan Life Ins. Co., 61 S.W.(2d) 704, which, so far as the question of liability under the policy contract is concerned, cannot be distinguished from this case. In that case the court construed section 5741 to mean two things:

(1) That the method provided in the statute for determining the amount available for the purchase of extended insurance was the least favorable method available to the insurer.

(2) That whatever amount was available for the purchase of extended insurance, either under the statutory method of computation or any more favorable method provided in the policy, was to be used as a single premium for the purchase of extended insurance for at least the face of the policy reduced by the amount of policy loans.

■ The statutes of Missouri, so far as applicable, were a part of the policy to the same extent as though they had been expressly written into it. Whittaker v. Mutual Life Ins. Co., 133 Mo. App. 664, 669, 114 S. W. 53; Cravens v. New York Life Ins. Co., 148 Mo. 583, 604, 50 S. W. 519, 53 L. R. A. 305, 71 Am. St. Rep. 628; Id., 178 U. S. 389, 395–397, 20 S. Ct. 962, 44 L. Ed. 1116; Smith v. Mutual Benefit Life Ins. Co., 173 Mo. 329, 341, 72 S. W. 935; Great Southern Life Ins. Co. v. Jones (C. C. A. 8) 35 F.(2d) 122, 126; New York Life Ins. Co. v. Rositzky (C. C. A. 8) 45 F.(2d) 758, 760; Gooch v. Metropolitan Life Ins. Co., supra (Mo. Sup.) 61 S. W.(2d) 704, 706.

The question, then, is whether it was section 5741, as construed in the decisions of the Missouri Courts of Appeals, which were expressly overruled by the Supreme Court of Missouri in the Gooch Case [page 706 of 61 S.W.(2d)], which was written into this poli-

cy, or whether it was the statute as now construed by that court.

■ The rule is that federal courts will follow the interpretation put upon the state statutes by the state courts, and that the construction declared by the highest court of the state will be applied. Minneapolis Steel & Machinery Co. v. Federal Surety Co. (D. C.) 22 F.(2d) 712, 713; Keith, Former Collector, v. Johnson, Administratrix, 271 U. S. 1, 8, 46 S. Ct. 415, 70 L. Ed. 795; Bauserman v. Blunt, 147 U. S. 647, 657, 13 S. Ct. 466, 37 L. Ed. 316; Edward Hines Yellow Pine Trustees v. Martin, 268 U. S. 458, 462, 45 S. Ct. 543, 69 L. Ed. 1050; Old Colony Trust Co. v. City of Omaha, 230 U. S. 100, 116, 33 S. Ct. 967, 57 L. Ed. 1410; Messinger v. Anderson, 225 U. S. 436, 444, 32 S. Ct. 739, 56 L. Ed. 1152; Denver & R. G. R. Co. v. United States, United States v. Denver & R. G. R. Co. (C. C. A. 8) 241 F. 614, 620; St. Louis & S. F. R. Co. v. Quinnette (C. C. A. 8) 251 F. 773, 775; Hudson et al. v. Maryland Casualty Co. (C. C. A. 8) 22 F.(2d) 791.

■ "The highest court of Missouri is the Supreme Court. Its decisions are controlling upon the three Courts of Appeals of that state (Const. Mo. art. 6 [Amendment of 1884]; § 6) and decisions of such Courts of Appeals have not the force of stare decisis with the Supreme Court (Sedalia v. Donohue, 190 Mo. 407, 415, 89 S. W. 386, 4 Ann. Cas. 89; Paddock v. Railway, 155 Mo. 524, 534, 56 S. W. 453), nor even as establishing the 'law of the case' (Paddock v. Railway, 155 Mo. 524, 534, 56 S. W. 453; Hennessy v. Brewing Co., 145 Mo. 104, 115, 46 S. W. 966, 41 L. R. A. 385, 68 Am. St. Rep. 554)." Hudson v. Maryland Casualty Co. (C. C. A. 8) supra, 22 F.(2d) 791, 792.

■ The construction of section 5741 as announced by the Supreme Court of Missouri is the construction which we are bound to follow in this case.

It is therefore apparent that, upon the death of the insured, his beneficiary, under the most favorable option provided by the policy, was entitled to receive from the company the face amount insured by the policy, less unpaid indebtedness, and that the provision of the policy for a reduction in the amount of the extended insurance in such proportion as the indebtedness bore to the cash value was void as being in contravention of the statute of Missouri as now construed by the highest court of the state.

It is, however, the contention of the company that, because of the manner in which

this case was presented and tried in the court below, this court is precluded from disturbing the judgment appealed from, although it is now plain that that judgment represents only a small proportion of what the company actually owed Mrs. Trapp. This suit was not brought upon the theory that Mrs. Trapp was entitled to the face of the policy less policy loans, by virtue of section 5741, but upon the theory that the policy was in full force and effect at the time of the insured's death. Strictly speaking, the court below committed no error in failing to take note of section 5741 and in failing to foresee that the Supreme Court of Missouri would, after the trial, construe that statute differently than it previously had been construed by the Missouri Courts of Appeals. The court, however, had before it the policy and all of the facts which conditioned the p'aintiff's rights under it. It took judicial notice of the laws of the state. Jennings et al. v. Canady et al. (C. C. A. 8) 13 F.(2d) 356, 359; Stimpson v. Commissioner of Internal Revenue (C. C. A. 8) 55 F.(2d) 815, 818; Land Co. of Florida v. Fetty (C. C. A. 5) 15 F.(2d) 942, 943; Lyons v. Reinecke, Collector (C. C. A. 7) 10 F.(2d) 3, 6; Wilkinson, Collector, v. Mutual Bldg. & Sav. Ass'n (C. C. A. 7) 13 F.(2d) 997, 998; Laubenheimer et al. v. Factor (C. C. A. 7) 61 F.(2d) 626, 630.

What the plaintiff actually urged upon the court below was:

1. That the policy originally took effect on November 30, 1917, the date of delivery, instead of November 15, 1917, the date of the policy, and that therefore the last quarterly premium was due not on May 15, 1931, but on May 30, 1931.

2. That there had been two previous lapses, followed by reinstatements, and that the reinstatements of the policy were in effect new contracts and not restorations of the old contract, so that the premiums paid upon reinstatement should not be applied toward making good previous defaults', but for carrying the new policies forward.

3. That the antidiscrimination statute of Missouri, section 5729, Revised Statutes, Missouri, 1929 (Mo. St. Ann. § 5729, p. 4369), which provides: "No life insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals between insurants (the insured) of the same class and equal expectations of life in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; * * *" did not permit the company in its policy to make any distinction in the options available in case of default in payment of premiums between an insured who had borrowed upon his policy and one who had not.

With respect to all of these questions, our views are in accord with those of the court below.

The dates when premiums fell due were those agreed to by the parties in the policy, and were therefore binding upon them. New York Life Ins. Co. v. Silverstein (C. C. A. 8) 53 F.(2d) 986, 989; Sellars v. Continental Life Ins. Co. (C. C. A. 4) 30 F.(2d) 42, 44–45; McCampbell v. New York Life Ins. Co. (C. C. A. 5) 288 F. 465, 468, 469; McConnell v. Provident Savings Life Assur. Soc. of New York (C. C. A. 6) 92 F. 769, 771–772; Whitney v. Union Central Life Ins. Co. (C. C. A. 8) 47 F.(2d) 861, 864–866.

Under the terms of the policy, reinstatement restored the old policy and did not create a new one. Business Men's Assurance Co. of America v. Scott (C. C. A. 8) 17 F.(2d) 4, 6, 7; Travelers' Ins. Co. v. Ziegler (Tex. Civ. App.) 250 S. W. 1115, 1116, 1117. See, also, New York Life Ins. Co. v. Statham et al., 93 U. S. 24, 31–33, 23 L. Ed. 789. Any other rule as applied to level premium life insurance would be legally unsound and actuarially absurd. It would disturb the basis for all calculations as to premiums and benefits, and give to those insured who defaulted and subsequently reinstated, a distinct advantage over those who paid their premiums as they fell due.

The purpose of the antidiscrimination statute is to secure to the purchasers of life insurance, of the same age and condition of health, equality of treatment with respect to premiums and coverage, to prevent rebates being given and favoritism being shown, and, generally, to secure to those who buy insurance the coverage which the premiums actually paid entitle them to receive. Such statutes are not intended to prohibit the companies from writing policies which contain inducements to all policyholders alike to refrain from borrowing upon their policies, or which make some uniform distinction otherwise lawful between those who borrow and those who do not.

The result of the trial was due to what we must now regard as an erroneous construction of section 5741 by the Courts of Appeals of Missouri. The appellant was not at fault in failing to urge upon the court below an interpretation of section 5741 at variance

with that which had been adopted by the state courts. It would, under the law as then understood, have been futile for her to have done so. It is now clearly apparent, however, that a wrong result was reached, and that an affirmance would make final a judgment which we now know cannot be justified under the law. In a broad sense, the question of the validity of the provision of the policy providing for a reduced amount of extended insurance after lapse, in view of the Missouri statutes, was before the court below. In directing the verdict, the court said, speaking of the options available under the contract in case of lapse:

" 'The insured is entitled to one of the following options:'—so reads the contract, and those three options are: First, the cash surrender value; second, to have the insurance continued for a reduced amount of non-participating paid-up, endowment insurance— that is continued for the full period of the policy, the full life of the policy; third, to have the insurance continued for its original amount as term insurance; that is to say for such period as the cash surrender value would purchase.

"Now if that is all that there was here in this contract it would seem to me that it couldn't very well be argued that the plaintiff, having rejected the first and second options and having elected the third, would not be entitled to recover the full amount of the contract since there is no question that $36.00 would pay for the full amount of the contract for a period longer than that which elapsed from the time of default to the date of the death of the insured. I say if there were nothing else here than I have summarized, but there is something else here.

" 'Any indebtedness to the Company under this policy will be deducted from the cash value and such indebtedness will also reduce the amount of paid-up insurance or the amount continued as term insurance, and any period of endowment payable to the end of the endowment term, in such proportion as the indebtedness bears to the cash value at the due date of premium in default.'

"If that provision of the contract is binding on the parties, is valid, then all that is due the plaintiff here is $194.00 and some cents, which has been tendered to the plaintiff and there has been an offer that judgment may be taken in that amount. That is, the provision, the one I have just read, is the provision to which these parties agreed when this contract was entered into and they ought to be bound by the contract into which they entered. Of course they ought not to be bound

by any provisions of the contract which are invalid, which are void, which are not in effect because invalid."

The court then discussed section 5729, R. S. Missouri, 1929 (Mo. St. Ann. § 5729, p. 4369), urged by Mrs. Trapp against the validity of that provision of the policy. The court did not and under the circumstances necessarily would not consider section 5741. It is, however, referred to in parts of depositions offered by the defendant, which show that, under the method of computation provided by that section, there would have been available for the purchase of extended insurance no amount whatsoever.

The general rule is that a question of law which was not presented to nor passed upon by the trial court cannot be raised on appeal. Virtue v. Creamery Package Mfg. Co. et al., 227 U. S. 8, 38, 39, 33 S. Ct. 202, 57 L. Ed. 393; Hecht v. Alfaro (C. C. A. 9) 10 F.(2d) 464, 466; Bort v. E. H. McCutchen & Co. et al. (C. C. A. 8) 187 F. 798, 799; Weinstein v. Laughlin (C. C. A. 8) 21 F.(2d) 740, 742; Wolfberg v. State Mut. Life Assur. Co. of Worcester, Mass. (C. C. A. 8) 36 F.(2d) 171, 175; Ayers v. United States (C. C. A. 8) 58 F.(2d) 607, 609.

The right, however, of an appellate court to notice a plain error where that is essential to prevent a miscarriage of justice, even in a civil case, has been recognized. A. Santaella & Co. v. Otto F. Lange Co. (C. C. A. 8) 155 F. 719, 724; Baltimore & Ohio Ry. Co. v. McCune (C. C. A. 3) 174 F. 991, 992; Radetsky v. Gramm-Bernstein Motor Truck Co. (C. C. A. 8) 4 F.(2d) 965, 968; Kleman v. Anheuser-Busch Brewing Ass'n (C. C. A. 3) 237 F. 993, 998; Ayers v. United States (C. C. A. 8) supra, 58 F.(2d) 607, 609; Schmidt v. United States (C. C. A. 8) 63 F.(2d) 390, 391; United States v. Tennessee & Coosa R. R. Co., 176 U. S. 242, 256, 20 S. Ct. 370, 44 L. Ed. 452.

In A. Santaella & Co. v. Otto F. Lange Co. (C. C. A. 8) supra, 155 F. 719, 724, this court said:

"That counsel does not fully recognize and urge a principle of law in argument which is embraced within the pleadings or presented in the record cannot preclude the court from giving due consideration and application to a rule of law which is determinative of the controversy. Indeed, an appellate court would fail to heed the wholesome maxim, 'Interest reipublicæ ut sit finis litium,' should it fail to take notice, when reasonably presented, of a settled principle of law the application of which ends the litigation."

In Seufert Bros. Co. v. Lucas (C. C. A. 9) 44 F.(2d) 528, 530, the court said:

"In the instant case the facts upon which the petitioner sought relief were fully set forth in its claim and the evidence adduced disclosed the entire transaction in sufficient detail and completeness to enable the board to make all pertinent and essential findings under either subdivision of the statute. The mere fact that one subdivision of the section was relied on instead of another was not sufficient to warrant the board in denying appropriate relief under the facts disclosed under the applicable subdivision of the section."

In United States v. The Schooner Peggy, 1 Cranch, 103, the Supreme Court said at page 110, 2 L. Ed. 49:

"It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied."

See, also, Gulf, Colorado & Santa Fe Ry. Co. v. Dennis, 224 U. S. 503, 505–507, 32 S. Ct. 542, 56 L. Ed. 860; Missouri ex rel. Wabash Railway Co. v. Public Service Commission, 273 U. S. 126, 131, 47 S. Ct. 311, 71 L. Ed. 575.

In Duignan v. United States et al., 274 U. S. 195, 200, 47 S. Ct. 566, 568, 71 L. Ed. 996, the following language was used:

"This court sits as a court of review. It is only in exceptional cases coming here from the federal courts that questions not pressed or passed upon below are reviewed."

The record made in the court below contains all of the facts essential to a correct determination of this controversy. The instruction of a verdict favorable to the defendant is assigned as error, and section 5741 of the Missouri Statutes, as interpreted by the case of Gooch v. Metropolitan Life Ins. Co., supra (Mo. Sup.) 61 S.W.(2d) 704, is urged upon us as a ground for reversal.

We regard this case as an exceptional one and analogous to those in which a change of the law after trial has required a reversal of a judgment right when rendered. We have no intention of departing from the general rule that this court will not review questions not presented to nor passed upon by the lower court, but we think it is our duty to recognize the changed situation and "to give effect to a matter arising since its judgment, and bearing directly upon the right disposition of the case." Gulf, Colorado & Santa Fe Ry. Co. v. Dennis, supra, 224 U. S. 503, 507, 32 S. Ct. 542, 543, 56 L. Ed. 860.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.