## FIDELITY NAT. BANK & TRUST CO. v. METROPOLITAN LIFE INS. CO.
### No. 9164.

District Court, W. D. Missouri, W. D.
Oct. 17, 1935.

Scarritt, Jones & North, of Kansas City, Mo., for plaintiff.

Meservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., for defendant.

OTIS, District Judge.

This is an action at law to recover on a policy of life insurance. The pleadings in the case consist of the petition, the answer, and a demurrer to the answer. The declared purpose of the parties is that ·the case shall be submitted finally upon the pleadings.

### The Pleadings.

The petition alleges that a policy of life insurance was issued by the defendant to one William L. Noell in which the plaintiff was, at the time of Noell's death, the beneficiary. Full performance by Noell and the plaintiff of all obligations under the policy and the death of Noell on April 2, 1932, within the alleged term of the policy, are alleged. The prayer of the petition is for the principal amount of the policy, less an amount which had been loaned to Noell on the policy, and less $211.30 which had been paid plaintiff by the defendant. The policy is in the principal amount of $5,000. The amount demanded in the petition is $4,180.70.

It is alleged in the answer that the premium due on January 19, 1932, was not and never had been paid, and that on that date there was outstanding on the security of the policy and unpaid a loan and indebtedness of $608, which was the full guaranteed cash and loan value of the policy. Further it is alleged in the answer that on January 19, 1932, there had been apportioned to 'the policy divisible surplus in the amount of $26.39; that that amount was the only equity the insured then had in the policy.

The policy itself is incorporated in the answer. The only reference which the policy makes to the subject of extended insurance (and plaintiff makes its claim on the theory that there was extended insurance in force when the insured died) is in paragraph 9. That part of the policy is as follows:

"After premiums for two full years shall have been paid on this policy, the owner hereof or the assignee of record, if any, upon written request filed with the company at its home office, together with the presentation of this policy for legal surrender or endorsement within three months after the due date of any premium in default, shall be entitled to one of the following options:

"(a) Cash Surrender Value—

"To receive the cash surrender value which shall be the reserve on this policy (omitting fractions of a dollar per thousand of insurance) and on any outstanding paid-up additions at due date of premium in default, less a surrender charge during the second policy year of not more than two and one-half per cent of the amount of insurance under this policy. The company shall deduct from such cash surrender value any indebtedness to the company for which this policy is security, the remainder being hereinafter referred to as the 'net sum'; or

"(b)  *  *  *

"(c) Paid-Up Term Insurance—

"To have the insurance continued in force from the due date of premium in de-

fault as non-participating paid-up term insurance. If there be no indebtedness to the company for which this policy is security, the amount of such paid-up term insurance shall be equal to the amount of insurance under this policy, plus any outstanding paid-up additions, and for a term (in years and whole number of months) such as the cash surrender value as defined under (a) above will purchase at the then attained age of the insured when applied as a net single premium. If there be any such indebtedness the amount of the paid-up term insurance will be reduced in such proportion as the indebtedness bears to the cash surrender value as defined under (a) above. Such paid-up term insurance may be surrendered at any time for its then cash surrender value (viz., its full reserve value at the date of surrender)."

It is alleged in the answer, and the policy itself conclusively establishes the truth of the allegation, that the "cash surrender value" of this policy on January 19, 1932, was $608. That cash surrender value did not include the $26.39 apportioned to the insured as his part of divisible surplus. The term "cash surrender value" is defined in the policy as "the reserve on this policy." The term "reserve" has a well-understood meaning and does not include "divisible surplus." Moreover, the "cash surrender value" of the policy is set out in exact figures and is stated to be for this policy "at the end of the sixth year $608.-00." Under the paragraph in the policy having to do with loans, it is provided that the loan value of the policy at the end of any current policy year shall not be greater than the cash surrender value. The loan value of the policy is set out as being $608 at the end of the sixth calendar year. Moreover, the answer expressly alleges the fact to be that the full guaranteed cash and loan value of the policy on January 19, 1932, was $608.[1]

Plaintiff's demurrer to the answer admits all of the facts alleged in the answer.

1. No contention is made by the plaintiff that it is entitled under the policy itself (without considering as a part of it section 5741 of the Revised Statutes of Missouri 1929 [Mo. St. Ann. § 5741, p. 4388]) to any greater amount than that which already has been paid to it. Plaintiff places its reliance on section 5741 as construed by the Supreme Court of Missouri in Gooch v. Metropolitan Life Insurance Co., 333 Mo. 191, 61 S.W.(2d) 704. It is necessary then to consider the effect of that statute as interpreted by the Supreme Court of the state. The statute is as follows:

"No policies of insurance on life hereafter issued by any life insurance company authorized to do business in this state shall, after payment upon it of three or more annual payments, be forfeited or become void by reason of non-payment of premiums thereon, but it shall be subject to the following rules of commutation, to-wit: The net value of the policy, when the premium becomes due and is not paid, shall be computed upon the actuaries' or combined experience table of mortality with four per cent interest per annum, and after deducting from three-fourths of such net value the unpaid portion of any notes given on account of past premium payments on said policy and any other indebtedness to the company secured by said policy, which notes and indebtedness shall then be canceled, the balance shall be taken as a net single premium for temporary insurance (extended insurance). The amount of such temporary insurance shall be such as is specified in the policy, but never less than the face amount insured by the policy reduced by the unpaid portion of notes and indebtedness aforesaid."

### Statutory Method of Computation.

Now it is quite clear (and learned counsel for plaintiff undoubtedly would concede it) that, if the method of computing the "net single premium for temporary (extended insurance)" set up in this statute

---

[1] It is true that the answer sets out that the plaintiff contends that the dividend of $26.39 due the insured on January 19, 1932, is to be considered as increasing the cash surrender value from $608 to $634.39, and that as a result thereof the cash surrender value on the date named was $26.39 in excess of the loan or indebtedness against the policy. It is true also that the answer sets out a letter from the defendant to the plaintiff in which it is inferentially conceded by the defendant that the dividend of $26.39 was a part of the cash surrender value of the policy on January 19, 1932. But, of course, these statements in the answer do not amount to an allegation that the fact is that the dividend was a part of the cash surrender value. The allegation of fact is that the cash surrender value did not include the dividend, and the language of the policy itself demonstrates that the cash surrender value which might be available for the purchase of extended insurance does not include any dividend apportioned to the insured.

were adopted in this case, there would be no net single premium, and therefore no temporary or extended insurance. At this point, however, counsel for the plaintiff urges the interpretation of the statute adopted by the Supreme Court in Gooch v. Metropolitan Insurance Co. That interpretation more clearly is presented by the Eighth Circuit Court of Appeals in Trapp v. Metropolitan Life Ins. Co., 70 F.(2d) 976, 979, than it is in the opinion in the Gooch Case.

Referring to the Gooch opinion, the Eighth Circuit Court of Appeals said that: "In that case the court [the Supreme Court of Missouri] construed section 5741 [Mo. St. Ann. § 5741, p. 4388] to mean two things: (1) That the method provided in the statute for determining the amount available for the purchase of extended insurance was the least favorable method available to the insurer. (2) That whatever amount was available for the purchase of extended insurance, either under the statutory method of computation or any more favorable method provided in the policy, was to be used as a single premium for the purchase of extended insurance for at least the face of the policy reduced by the amount of policy loans."

### No Extended Insurance under Policy.

We are concerned here with the second branch of this interpretation, and our inquiry is, "What amount was available for the purchase of extended insurance * * * under * * * any * * * method provided in the policy?" For answer to that inquiry we must, of course, look to the policy.

The policy makes no provision whatever for the purchase of extended insurance, after lapse of the policy, except in paragraph 9 hereinbefore set out. Nothing in that paragraph entitled the insured to any amount of extended insurance for any time. The plaintiff points, however, to another provision of the policy and to an admitted fact.

The answer admits that on January 19, 1932, the insured under the policy was entitled to a dividend of $26.39 pursuant to a provision of the policy governing "participation in divisible surplus." That provision is as follows:

"This policy is a participating contract while in force as a premium-paying policy, and the company will annually, as of the thirty-first day of December of each year, ascertain and apportion any divisible surplus accruing hereon. (See 'Notice to Policyholder' below). Such divisible surplus will be payable on the next anniversary of this policy following the next succeeding thirtieth day of April and may, at the option of the insured, or of the assignee of record, if any, be either (a) paid in cash; or (b) applied within the grace period towards the payment of any premium or premiums; or (c) applied to the purchase of a participating paid-up addition to the sum insured; or (d) left to accumulate to the credit of this policy at such rate of interest as the company may declare on such funds, but not less than 3½ per centum per annum, and payable at maturity of this policy or withdrawable in cash on any anniversary date of this policy. If no other option is selected by the insured, or by the assignee of record, if any, within three months after the date when such divisible surplus is payable, then the divisible surplus will be applied to the purchase of a paid-up addition to the sum insured. Such paid-up addition may be surrendered at any time for a cash value at least equal to the amount of the surplus originally applied to its purchase."

We must determine whether this provision of the policy does make available to the insured any amount to be used as a net single premium for the purchase of extended insurance. That it does not do so is obvious from the mere reading of the provision. The provision incorporates no option for the use of the so-called dividend (participation in divsible surplus) for the purchase of extended insurance. It does contain one option, option (c), permitting the insured to elect to have the dividend "applied to the purchase of a participating paid-up addition to the sum insured." Plaintiff's counsel builds his argument upon this option.

### Plaintiff's Argument.

Although the insured under this policy did not select any of the options referred to in this policy provision, it is argued that the plaintiff as beneficiary could do so after the death of the insured. The argument then proceeds (and I quote now from the brief of counsel for the plaintiff):

"Having established the fact that plaintiff has the same right of election which was vested in the insured, let us see what the insured could have elected. Insured could have said to the company: 'I desire

that the $26.39 be applied to the purchase of paid-up life insurance in the sum of $50.00.' As admitted in Paragraph 10 of the answer, his request would have been honored.

"Insured could then have said, 'Having $50.00 of paid-up additions to my insurance, the cash surrender value of which is $26.-39, as recited in Paragraph 12 of the policy, I desire that said cash surrender value of $26.39 be applied to the purchase of $4392.00 of paid-up term insurance under Paragraph 9 of the policy.' Likewise that request would have been granted, for insured had that option. As admitted in Paragraph 29 of the answer, $26.39 would have purchased $4392.00 of term insurance for a period extending beyond the date of the death of insured.

"Insured having had the option to effect the result aforesaid, for a period extending beyond the date of his death, the same right vests in plaintiff, and plaintiff is entitled to recover according to the prayer of the petition."

## The Argument Is Unsound.

Laying aside the question whether the plaintiff as beneficiary, after the death of the insured, could exercise an option which the insured did not exercise in his lifetime, it is clear that there is a fatal error in the reasoning and argument of counsel.

Keeping in mind that our inquiry is whether the policy makes any provision for extended insurance on account of any dividend due to the insured at the date of lapse (for it may be conceded that, if there is any such provision, then, perforce the statute, the amount of the extended insurance is the face of the policy less indebtedness), it is certainly beyond controversy that the provision for such extended insurance must itself be included in some one of the options granted. But plaintiff's counsel points to no such option. There is none. He points only to the option made available after an option set out in the provision first has been accepted. In so many words counsel says that the insured might have accepted option (c) and thereafter might have surrendered the paid-up addition so obtained and receive its cash value. Then he could have demanded term insurance in the full amount of the policy for such length of time as that cash payment would have purchased.

But there is not even a remote suggestion in the provision governing participation in divisible surplus that, if the option for a paid-up addition is exercised and if thereafter the paid-up addition is surrendered for cash, the insured shall have the further option of having that cash applied on the purchase of extended insurance for the full face of the original policy.

If it be conceded arguendo that the plaintiff, after the death of. the insured, might exercise the options given to the insured by the policy, certainly the plaintiff would have no greater rights in that regard than the insured himself if he had lived. If we suppose, then, that the insured exercised his option and elected to purchase with his dividend a paid-up addition to his policy, and thereafter had exercised the right given him to surrender that paid-up addition for a cash value, what provision in the policy or in any statute would have given him the right to demand in lieu of the cash he would have been entitled to receive a term policy for $5,000?

Certainly nothing in the policy gives the insured any such privilege. Quite as certainly it is not given by section 5741. The interpretation given that section by the Missouri Supreme Court, by which it is construed to provide for extended insurance for the full amount of the policy if by any method stated in the policy an amount is available for the purchase of extended insurance, is not still further to be expanded so as to force into the policy a method for acquiring extended insurance which was never in it.

## Different Facts in Gooch Case.

■ I do not overlook the fact that in the Gooch Case it was considered by the court that a dividend due the insured at the time of the lapse of the policy there involved was to be considered as a part of the amount available to the insured for the purchase of extended insurance, although it was entirely unnecessary to have so included it, for the reason that without including it there was still enough available to purchase extended insurance for a period including the time of the death of the insured. The annual premium under that policy was $15.96. The dividend was $6.22. The reserve value of the policy, exclusive of the dividend, was $248 and the indebtedness was $224.57. The difference between the reserve value and the indebtedness was $23.43, much more than enough to purchase extended insurance for one year and the insured died within the year.

But, in finding (and that finding perhaps is to be inferred) that the dividend was a part of the amount available under the policy for the purchase of extended insurance the court was not construing any statute, it was construing the policy. The construction of the policy may have been correct as to the policy which was involved in that case. It certainly is not correct as to the policy which is involved in this case. In any event, while the construction by the Supreme Court of Missouri of a state statute is binding upon this court, its construction of a policy of insurance is not binding upon this court. It is stated by the court in the Gooch Case that it was conceded by the insurance company that under the policy there was an amount available for the purchase of extended insurance, which amount included the dividend of $6.22. In the case here there is no such concession. On the contrary, the facts established by the pleadings are quite the contrary.

#### Conclusion Reached.

2. The conclusion is that under the policy here and the admitted facts defendant already has paid plaintiff all it is entitled to receive. The truth is defendant has paid the plaintiff more than the plaintiff is entitled to receive.

Other questions than those considered in this opinion were argued, but decision of them is unnecessary, and therefore they are not discussed.

The demurrer to the answer should be, and is, overruled. It is so ordered.

An exception is allowed to plaintiff.

Counsel for defendant will prepare and submit for approval and entry a formal judgment.

